STATE of Wisconsin, Plaintiff-Respondent,

v.

Leonard J. HARVEY, Defendant-Appellant-Petitioner.

Supreme Court

*No. 00–0541–CR. Oral argument December 4, 2001.—Decided July 9, 2002.*

2002 WI 93

(Also reported in 647 N.W.2d 189.)

443

For the defendant-appellant-petitioner there were briefs by *Margaret A. Maroney,* assistant state public defender, and oral argument by *Stephen P. Weiss,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Lara M. Herman,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

¶ 1. DIANE S. SYKES, J. This case presents a constitutional challenge to the jury instruction provision of Wisconsin's judicial notice statute, Wis. Stat. § 902.01(7) (1997–98),[1] as applied to an element of a penalty enhancer in a criminal case.

¶ 2. The defendant, Leonard Harvey, was charged with possession of cocaine with intent to deliver, within 1,000 feet of Penn Park in the City of Madison. The base offense of possession of cocaine with intent to deliver was punishable by up to ten years in prison. The penalty enhancer, applicable when the offense is committed within 1,000 feet of certain protected places (including city parks), increased the potential maximum imprisonment by five years.

---

[1] All further references to the Wisconsin Statutes will be to the 1997–1998 version unless otherwise indicated.

¶ 3. At trial, over the defendant's objection, the circuit court took judicial notice that Penn Park was a city park for purposes of the penalty enhancer, and instructed the jury pursuant to Wis. Stat. § 902.01(7) that it was to accept the judicially-noticed fact as true. The defendant was convicted of the enhanced offense.

¶ 4. The court of appeals affirmed the conviction, concluding that Harvey's due process and jury trial rights had not been violated by the jury instruction regarding the judicially-noticed fact. We accepted review, and now affirm, although on different grounds.

¶ 5. *Apprendi v. New Jersey,* 530 U.S. 466 (2000), held that the elements of a penalty enhancer (other than a prior conviction) are elements of the offense, which, pursuant to the constitutional guarantees of due process and trial by jury, must be submitted to the jury and proven beyond a reasonable doubt. A jury instruction that directs a jury to accept as true a judicially-noticed fact that constitutes an element of the crime is indistinguishable from a mandatory conclusive presumption on an elemental fact, which is unconstitutional under *Sandstrom v. Montana,* 442 U.S. 510, 524 (1979), and *State v. Kuntz,* 160 Wis. 2d 722, 737, 467 N.W.2d 531 (1991).

¶ 6. However, under *Kuntz* and *Neder v. United States,* 527 U.S. 1, 4 (1999), this type of constitutional instructional error is subject to application of the harmless error rule. Accordingly, although we conclude that the judicial notice instruction as applied to the "city park" element of the enhanced drug offense in this case was constitutional error, we nevertheless affirm. The error was harmless, because it cannot be and is not disputed that the park in question in this case is a city park.

446

¶ 7. Leonard Harvey was charged with three criminal counts: possession of five grams or less of cocaine with intent to deliver, within 1,000 feet of "Penn Park, a state park," contrary to Wis. Stat. §§ 961.41(1m)(cm)1 (the base drug offense) and 161.49[2] (the penalty enhancer); possession of marijuana contrary to Wis. Stat. § 961.41(3g)(e); and obstructing an officer contrary to Wis. Stat. § 946.41(1).

¶ 8. The case was tried to a jury. At trial, City of Madison Police Officer Michelle Riesterer testified that on June 22, 1998, while patrolling in her squad, she observed Harvey leaning up against the side of an apartment building where "No Trespassing" signs had been posted. She stopped her squad, approached Harvey, and smelled the odor of marijuana. She told Harvey that he was under arrest for trespassing, and he attempted to leave the scene. During the ensuing foot pursuit, the officer saw Harvey make a motion with his left hand toward some bushes. After Harvey was arrested, the officer searched the bushes and found two plastic baggies, each containing six corner cuts of crack cocaine. A trace amount of marijuana was found in Harvey's pocket.

¶ 9. Riesterer also testified that she measured the distance between Harvey's location and Penn Park, and that the distance was less than 1,000 feet. The State rested its case without eliciting evidence that Penn

---

[2] The statute was renumbered by 1995 Wisconsin Act 448, effective July 9, 1996. Although the charged offense occurred after the renumbering and relocation of the controlled substance laws from Chapter 161 to Chapter 961, the information in this case cited the penalty enhancer previously appearing at Wis. Stat. § 161.49 instead of Wis. Stat. § 961.49. This apparently was a clerical error. The judgment of conviction cites the correct statute.

Park was the type of park specified in the penalty enhancer, that is, a "state, county, city, village or town park." Wis. Stat. § 961.49(1)(b)1.

¶ 10. At the close of the evidence, during the jury instruction conference, the State moved to amend the information "to include the statement county, city, village or town park rather than state park." Harvey objected, claiming prejudice. Harvey also moved for a directed verdict on the penalty enhancer because the State had not put in evidence regarding the status of Penn Park as a "state, county, city, village or town park."

¶ 11. In response to Harvey's motion, the State asked for leave to reopen the proof in order to introduce testimony that Penn Park was, in fact, a city park. The Dane County Circuit Court, the Honorable Stuart A. Schwartz, denied the State's request and instead took judicial notice that Penn Park was a city park. The defense objected. The court denied the defense motion for a directed verdict on the penalty enhancer.

¶ 12. When the jury was returned to the courtroom for closing arguments and instructions, the State was allowed to reopen the proof for the limited purpose of informing the jury that the court had taken judicial notice that Penn Park is "a city park located in the City of Madison." The court then instructed the jury that "[t]he Court has taken judicial notice of certain facts and you are directed to accept the following as true: Penn Park is a city park located in the City of Madison, Dane County, Wisconsin." The jury returned a verdict of guilty on all three counts.

¶ 13. At sentencing, Harvey renewed his objection to the court having taken judicial notice that Penn Park is a city park within the meaning of the penalty enhancer. The circuit court noted the objection, considered it preserved for appeal, but declined to revisit the prior ruling. Harvey faced a maximum of 15 years in

prison on the enhanced cocaine count (ten years for the base drug offense plus five years as provided in the penalty enhancer); six months on the marijuana count; and nine months on the obstructing count. In addition, on the enhanced cocaine count, pursuant to a separate provision in the penalty enhancer, Wis. Stat. § 961.49(2)(am), Harvey was subject to a presumptive minimum sentence of three years without parole.[3]

¶ 14. The circuit court sentenced Harvey to 42 months on the enhanced cocaine count, plus four and six months, respectively, on the marijuana and obstructing counts, to run consecutively, for a total of 52 months in prison. By operation of the presumptive minimum provisions of the penalty enhancer, Harvey is ineligible for parole until he has served at least three years in prison.

¶ 15. Harvey appealed on the issue of the penalty enhancer, and the court of appeals affirmed. The court concluded that judicial notice in a criminal case was not constitutionally improper. *See State v. Harvey*, 2001 WI App 59, ¶ 15, 242 Wis. 2d 189, 625 N.W.2d 892.

¶ 16. The court of appeals held that Penn Park's status as a city park was an adjudicative fact appropriate for judicial notice under Wis. Stat. § 902.01(1) and (2), and that pursuant to Wis. Stat. § 902.01(7), the judge was required to instruct the jury to accept the judicially-noticed fact as established. The court did not view the use of the judicial notice instruction on an

---

[3] Wisconsin Statute § 961.49(2)(am) provides in relevant part:

> The court shall sentence a person to whom par. (a) applies to at least 3 years in prison, but otherwise the penalties for the crime apply. Except as provided in s. 961.438, the court shall not place the person on probation. Except as provided in s. 973.01(6), the person is not eligible for parole until he or she has served at least 3 years, with no modification by the calculation under s. 302.11(1).

elemental fact as tantamount to a mandatory conclusive presumption on an elemental fact, which operates to unconstitutionally relieve the State of its burden of proving every element of the offense. *See id.* at ¶¶ 18, 20.

¶ 17. The court of appeals held that "because a criminal defendant's right to trial by jury extends only to contestable issues of fact, the taking of judicial notice of an incontestable fact does not violate that right." *Id.* at ¶ 19. The court concluded that the State had in fact carried its burden of proving Penn Park's status as a city park, albeit "via the evidentiary device of judicial notice instead of by introducing testimony or other evidence of the undisputed fact." *Id.* at ¶ 20. We accepted review.

## II

¶ 18. The question in this case is the constitutionality of the jury instruction provision of the judicial notice statute, Wis. Stat. § 902.01(7), as applied to an element of a penalty enhancer in a criminal case. This is a question of law that we review de novo. *See State v. Howard,* 211 Wis. 2d 269, 277, 564 N.W.2d 753 (1997).

¶ 19. The Fifth Amendment's due process guarantee,[4] applied to the states by operation of the Fourteenth Amendment,[5] protects "the accused against conviction except upon proof beyond a reasonable doubt of

---

[4] The Fifth Amendment provides: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . .; nor be deprived of life, liberty, or property, without due process of law . . . ."

[5] The Fourteenth Amendment provides: "No State shall make or enforce any law which shall abridge the privileges or

every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970); *see also Carella v. California,* 491 U.S. 263, 265 (1989); *Kuntz,* 160 Wis. 2d at 736. States may not "deprive the accused of liberty unless the prosecution proves beyond a reasonable doubt every element of the charged offense." *Carella,* 491 U.S. at 265.

¶ 20. The Sixth Amendment[6] right of trial by jury in criminal cases includes, "as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of 'guilty.' " *Sullivan v. Louisiana,* 508 U.S. 275, 277 (1993); *see also State v. Peete,* 185 Wis. 2d 4, 19, 517 N.W.2d 149 (1994) ("where the finder of fact is a jury, proof of all essential elements must be tendered to the jury"). This means, of course, that a judge "may not direct a verdict for the State, no matter how overwhelming the evidence." *Sullivan,* 508 U.S. at 277; *see also Howard,* 211 Wis. 2d at 279; *State v. McAllister,* 107 Wis. 2d 532, 533, 319 N.W.2d 865 (1982).

¶ 21. The United States Supreme Court has recently held that these principles extend to the elements of penalty enhancers. In *Apprendi,* 530 U.S. at 468, the Supreme Court considered the constitutionality of New Jersey's "hate crimes" law, which provided for an increased penalty when the judge found, by a preponderance of the evidence, that the defendant committed the

---

immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

[6] The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ."

charged crime for the purpose of intimidation based on race, gender, or another of several additional enumerated improper purposes. The Court rejected New Jersey's argument that its "hate crimes" law constituted a mere "sentencing factor," and held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 530 U.S. at 490.

■

¶ 22. The Sixth Amendment right to trial by jury and the Fifth Amendment due process requirement of proof beyond a reasonable doubt are obviously interrelated.[7] *See Sullivan,* 508 U.S. at 278. "It would not satisfy the Sixth Amendment to have a jury determine that the defendant is *probably* guilty, and then leave it up to the judge to determine (as *Winship* requires) whether he is guilty beyond a reasonable doubt. In other words, the jury verdict required by the Sixth Amendment is a jury verdict of guilty beyond a reasonable doubt." *Id.* (emphasis in original).

■

¶ 23. Accordingly, jury instructions that have the effect of relieving the State of its burden of proving beyond a reasonable doubt every element of the offense charged are unconstitutional under the Fifth and Sixth Amendments. *See Sandstrom,* 442 U.S. at 521 (instruction that the law presumes that persons intend the

---

[7] The Wisconsin Constitution's parallel provisions are Article I, section 8 ("No person may be held to answer for a criminal offense without due process of law . . .") and Article I, section 7 ("In all criminal prosecutions the accused shall enjoy the right to . . . a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed").

ordinary consequences of their voluntary acts is unconstitutional); *see also Carella,* 491 U.S. at 365 (instructions containing conclusive presumptions are unconstitutional); *Francis v. Franklin,* 471 U.S. 307, 314 (1985) (instruction containing rebuttable presumption to same effect is unconstitutional). Criminal jury instructions that contain or operate as mandatory conclusive presumptions on elements of the offense "subvert the presumption of innocence accorded to accused persons and also invade the truth-finding task assigned solely to juries in criminal cases." *Carella,* 491 U.S. at 265; *Kuntz,* 160 Wis. 2d at 737 (mandatory conclusive presumptions on elemental facts violate due process and the right to trial by jury).

¶ 24. Harvey does not claim that judicial notice is always constitutionally improper in criminal cases, nor does he argue that the circuit court's application of judicial notice to Penn Park's status as a city park violated his constitutional rights. The focus of his constitutional challenge is on the jury instruction regarding the judicially-noticed fact. Harvey argues that the circuit court's instruction to the jury that it must accept as true the judicially-noticed fact regarding Penn Park's status as a city park operated as a mandatory conclusive presumption on an elemental fact of the enhanced offense in violation of his due process and jury trial rights.[8]

¶ 25. The jury instruction derives from the judicial notice statute, which provides:

---

[8] Harvey is not entirely clear about whether this is a facial challenge to Wis. Stat. § 902.01(7) or a challenge to the statute as applied here. On the one hand, he argues broadly that we should sever all criminal cases from the operation of Wis. Stat. § 902.01(7); on the other hand, he emphasizes that his challenge is only to the application of the statute's jury instruction requirement to the "city park" element of the enhanced offense

902.01 Judicial notice of adjudicative facts. (1) SCOPE. This section governs only judicial notice of adjudicative facts.

(2) KINDS OF FACTS. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (a) generally known within the territorial jurisdiction of the trial court or (b) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

(3) WHEN DISCRETIONARY. A judge or court may take judicial notice, whether requested or not.

(4) WHEN MANDATORY. A judge or court shall take judicial notice if requested by a party and supplied with the necessary information.

(5) OPPORTUNITY TO BE HEARD. A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

(6) TIMING OF TAKING NOTICE. Judicial notice may be taken at any stage of the proceeding.

(7) *INSTRUCTING THE JURY. The judge shall instruct the jury to accept as established any facts judicially noticed.*

Wis. Stat. § 902.01 (emphasis added).

¶ 26. For its part, the State agrees, as it must, that the elemental facts necessary to convict Harvey of the enhanced offense (the base drug offense *and* the

in this case. We view the case as presenting an "as applied" challenge, and decline to consider any broader argument of facial unconstitutionality.

penalty enhancer) must be submitted to the jury and proven beyond a reasonable doubt. The penalty enhancer provides:

> If any person violates s. 961.41(1)(cm), (d), (e), (f), (g), or (h) by delivering or distributing, or violates s. 961.41(1m)(cm), (d), (e), (f), (g) or (h) by possessing with intent to deliver or distribute, cocaine, cocaine base, . . . and the delivery, distribution or possession takes place under any of the following circumstances, the maximum term of imprisonment prescribed by law for that crime may be increased by 5 years: . . .
>
> *(b) While the person is in or on or otherwise within 1,000 feet of any of the following:*
>
> *1. A state, county, city, village or town park.*

Wis. Stat. § 961.49(1)(b)1 (emphasis added). Because the statute increases the prescribed maximum penalty for the underlying drug offense, *Apprendi* requires that its elements be submitted to the jury and proven beyond a reasonable doubt.[9] *Apprendi*, 530 U.S. at 490.

¶ 27. The State considers the penalty enhancer as a whole to be the elemental fact for purposes of *Apprendi*—it characterizes the park's status as merely a "sub-part of an element"—although it concedes that both the statute's distance requirement and the park's status must be submitted to the jury and proven beyond a reasonable doubt. The language of the statute plainly requires proof of two distinct facts: proximity ("within 1,000 feet") and a particular protected place ("a state,

---

[9] It should be noted that even before *Apprendi v. New Jersey*, 530 U.S. 466 (2000), penalty enhancers in this state—other than repeater penalty enhancers based upon a defendant's prior conviction(s)—have been considered to constitute additional elemental facts that must be submitted to the jury. *See* Comment, Wis JI—Criminal 6004.

county, city, village or town park"). Proof of one without the other would be insufficient for conviction. We read the statute as containing not one element with a sub-part, but two elemental facts—a distance requirement and a particularized protected place—both of which must be submitted to the jury and proven beyond a reasonable doubt.

¶ 28. The question, then, is whether the jury instruction required by Wis. Stat. § 902.01(7), as applied to the protected place element of the penalty enhancer in this case, had the effect of relieving the State of its burden of proof or invading the province of the jury on that element, in violation of Harvey's Fifth and Sixth Amendment rights. The court of appeals held that it did not, because the penalty enhancer was in fact submitted to the jury for decision, and the State carried its burden of proving its elements, although by way of the "evidentiary device" of judicial notice rather than testimony or other evidence. *Harvey*, 2001 WI App 59, ¶ 20. More specifically, the court held that the jury trial right "extends only to contestable issues of fact," and the defendant's "right to require the State to prove criminal charges beyond a reasonable doubt is protected by the opportunity to challenge a proffered fact as not being 'incontestable,' or otherwise not meeting the requirements for judicial notice under Wis. Stat. § 902.01." *Id.* at ¶¶ 19, 20.

¶ 29. We disagree. The court of appeals' rationale conflicts with the well-established principle that a defendant's due process and jury trial rights encompass the right to have the jury, rather than the judge, decide every element of the offense, to the requisite degree of beyond a reasonable doubt certainty. Here, the status of the alleged protected place as a "state, county, city, village or town park" is an element of the enhanced

offense. The jury instruction directed the jury to accept as true the judicially-noticed fact that the alleged protected place, Penn Park, is a city park; in other words, it directed the jury to find an element of the enhanced offense. The instruction, therefore, had the same effect as a mandatory conclusive presumption on an element of the offense, which is unconstitutional under *Sandstrom* and *Kuntz*.

¶ 30. Wisconsin's statute on presumptions in criminal cases requires the circuit court to instruct the jury that it may, but is not required to, accept the presumed fact:

> 903.03 Presumptions in criminal cases. . . .
>
> (2) SUBMISSION TO JURY. The judge is not authorized to find a presumed fact against the accused. . . .
>
> (3) INSTRUCTING THE JURY. Whenever the existence of a presumed fact against the accused is submitted to the jury, the judge shall give an instruction that the law declares that the jury may regard the basic facts as sufficient evidence of the presumed fact, *but does not require it to do so.*

Wis. Stat. § 903.03 (emphasis added).

¶ 31. It has been noted that a constitutionally valid " 'criminal presumption' is not a presumption at all but simply a permissive inference, that is, a finding of fact that may be grounded upon circumstantial evidence. Thus, a permissive inference is judicially-approved logic that endorses evidence of a basic fact as circumstantially sufficient to permit, but not compel, an inferred fact . . . ." *Genova v. State,* 91 Wis. 2d 595, 607, 283 N.W.2d 483 (Ct. App. 1979) (footnote omitted).

¶ 32. The constitutionality of any particular application of the "evidentiary device" of judicial notice (including, necessarily, the constitutionality of any particular application of the judicial notice jury instruction) is measured by the same standards as the constitutionality of evidentiary presumptions:

> Inferences and presumptions are a staple of our adversarial system of fact-finding. It is often necessary for the trier of fact to determine the existence of an element of the crime—that is, an "ultimate" or "elemental" fact—from the existence of one or more "evidentiary" or "basic" facts. The value of these evidentiary devices, and their validity under the Due Process Clause, vary from case to case, however, depending on the strength of the connection between the particular basic and elemental facts involved and on the degree to which the device curtails the fact-finder's freedom to assess the evidence independently. *Nonetheless, in criminal cases, the ultimate test of any device's constitutional validity in a given case remains constant: the device must not undermine the fact-finder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt. See In re Winship, 397 U.S. 358, 364; Mullaney v. Wilbur, 421 U.S. 684, 702–703, n.31. [Ulster County at 2224, 60 L.Ed.2d at 791–2].*

*Id.* at 610–11 (emphasis in original).

¶ 33. Here, judicial notice—or, more particularly, the jury instruction directing the jury to accept the judicially-noticed fact as true—was applied to an element of the enhanced offense. This had the effect of not merely undermining but eliminating the jury's opportunity to reach an independent, beyond-a-reasonable-doubt decision on that element, and was therefore constitutional error. The incontestability of Penn Park's status as a city park goes to whether the error was

harmless, not whether there was constitutional instructional error in the first place.

¶ 34. The federal rule governing judicial notice in criminal cases requires that the jury be instructed that "it may, but is not required to, accept as conclusive any judicially noticed fact." Fed. R. Evid. 201(g). Harvey invites us to exercise our rule-making authority in the context of this case to modify Wis. Stat. § 902.01(7) to conform to the federal judicial notice rule in criminal cases. We decline to do so. Our rule-making authority as it applies to statutory rules of pleading and practice is procedurally distinct from our case-deciding function, and is subject to certain statutory requirements regarding an opportunity for public comment and hearing. *See* Wis. Stat. § 751.12.

## III

¶ 35. Our conclusion that the judicial notice jury instruction as applied in this case was constitutional error does not end the matter. This type of instructional error is not per se prejudicial, but, rather, is subject to application of the harmless error rule.[10] *See Neder,* 527 U.S. at 4; *Kuntz,* 160 Wis. 2d at 738.

¶ 36. In *Neder,* the Supreme Court held that a jury instruction that improperly omitted an element of the offense (there, because the trial judge decided it, contrary to the defendant's due process and jury trial rights) is subject to harmless error analysis. *Neder,* 527 U.S. at 15. The Court noted that the federal harmless error rule, Rule 52(a) of the Federal Rules of Criminal

---

[10] *State v. Leist,* 141 Wis. 2d 34, 39, 414 N.W.2d 45 (Ct. App. 1987), incorrectly stated that there is a per se rule of automatic reversal ("[e]rrors of this type can never be considered harmless"), and to that limited extent is overruled.

Procedure, provides that errors not affecting substantial rights shall be disregarded, and applies to all properly preserved errors, including constitutional ones. *See id.* at 7.

¶ 37. The Court acknowledged that certain fundamental constitutional errors are not amenable to harmless error analysis—errors "so intrinsically harmful as to require automatic reversal (*i.e.,* 'affect substantial rights') without regard to their effect on the outcome"—but said this comprised "a limited class" of errors. *Id.* All other constitutional errors—including an erroneous jury instruction completely omitting an element of the offense—are subject to the harmless error rule:

> We have recognized that "most constitutional errors can be harmless." *Fulminante, supra,* at 306. "If the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other constitutional errors that may have occurred are subject to harmless-error analysis." *Rose v. Clark, 478 U.S. 570, 579, 92 L. Ed. 2d 460, 106 S. Ct. 3101 (1986).* Indeed, we have found an error to be "structural," and thus subject to automatic reversal, only in a "very limited class of cases." *Johnson v. United States, 520 U.S. 461, 468, 137 L. Ed. 2d 718, 117 S. Ct. 1544 (1997)* (citing *Gideon v. Wainwright, 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963)* (complete denial of counsel); *Tumey v. Ohio, 273 U.S. 510, 71 L. Ed. 749, 47 S. Ct. 437 (1927)* (biased trial judge); *Vasquez v. Hillery, 474 U.S. 254, 88 L. Ed. 2d 598, 106 S. Ct. 617 (1986)* (racial discrimination in selection of grand jury); *McKaskle v. Wiggins, 465 U.S. 168, 79 L. Ed. 2d 122, 104 S. Ct. 944 (1984)* (denial of self-representation at trial); *Waller v. Georgia, 467 U.S. 39, 81 L. Ed. 2d 31, 104 S. Ct. 2210 (1984)* (denial of public trial); *Sullivan v. Louisiana, 508 U.S. 275, 124 L. Ed. 2d 182, 113 S. Ct. 2078 (1993)* (defective reasonable-doubt instruction)).

The error at issue here—a jury instruction that omits an element of the offense—differs markedly from the constitutional violations we have found to defy harmless-error review. Those cases, we have explained, contain a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Fulminante, supra,* at 310. Such errors "infect the entire trial process," *Brecht v. Abrahamson, 507 U.S. 619, 630, 123 L. Ed. 2d 353, 113 S. Ct. 1710 (1993),* and "necessarily render a trial fundamentally unfair," *Rose, 478 U.S. at 577.* Put another way, these errors deprive defendants of "basic protections" without which" a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair." *Id. at 577–78.*

Unlike such defects as the complete deprivation of counsel or trial before a biased judge, an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.

*Neder,* 527 U.S. at 8 (emphasis in original).

¶ 38. The Court analogized the improper omission of an element to the improper inclusion of a conclusive presumption on an element or an instruction that misstates an element, both of which are non-structural errors subject to application of harmless error analysis:

We have often applied harmless-error analysis to cases involving improper instructions on a single element of the offense. See, *e.g., Yates v. Evatt, 500 U.S. 391, 114 L. Ed. 2d 432, 111 S. Ct. 1884 (1991)* (mandatory rebuttable presumption); *Carella v. California, 491 U.S. 263, 105 L. Ed. 2d 218, 109 S. Ct. 2419 (1989) (per curiam)* (mandatory conclusive presumption); *Pope v. Illinois, 481 U.S. 497, 95 L. Ed. 2d 439, 107 S. Ct. 1918 (1987)* (misstatement of element); *Rose, supra*

(mandatory rebuttable presumption). In other cases, we have recognized that improperly omitting an element from the jury can "easily be analogized to improperly instructing the jury on an element of the offense, an error which is subject to harmless-error analysis." *Johnson, supra,* at 469 (citations omitted); see also *California v. Roy, 519 U.S. 2, 5, 136 L. Ed. 2d 266, 117 S. Ct. 337 (1996) (per curiam)* ("The specific error at issue here—an error in the instruction that defined the crime—is . . . as easily characterized as a 'misdescription of an element' of the crime, as it is characterized as an error of 'omission' ").

*Neder,* 527 U.S. at 9–10.

¶ 39. Although the Supreme Court in *Neder* was applying principles of federal constitutional law to the federal harmless error rule, Wisconsin, of course, has its own statutory harmless error rule that is almost identical to the federal rule. Wisconsin Statute § 805.18, made applicable to criminal cases by Wis. Stat. § 972.11(1), prohibits reversal for error not affecting a party's substantial rights.[11] *See State v. Dyess,* 124 Wis. 2d 525, 547, 370 N.W.2d 222 (1985); *see also State v. Lindell,* 2001 WI 108, ¶ 69, 245 Wis. 2d 689, 629 N.W.2d 223; *State v. Armstrong,* 223 Wis. 2d 331, 368, 588 N.W.2d 606 (1999).

---

[11] Wisconsin Statute § 805.18(2) provides:

> No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of selection or misdirection of the jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial.

¶ 40. *Dyess,* our seminal harmless error case, applied federal constitutional principles to determine the proper standard for determining prejudice in criminal cases. *Dyess,* 124 Wis. 2d at 544. *Dyess* itself concerned a jury instruction that contained an erroneous conclusive presumption; the court, however, concluded that the instruction violated Wis. Stat. § 903.03(3), and specifically declined to reach the constitutional question under *Sandstrom. Id.* at 533–34. In any event, the court emphasized that the standard for evaluating an error's harmlessness is the same whether the error is constitutional, statutory, or otherwise:

> We conclude that, in view of the gradual merger of this court's collective thinking in respect to harmless versus prejudicial error, whether of omission or commission, whether of constitutional proportions or not, the test should be whether there is a reasonable possibility that the error contributed to the conviction. If it did, reversal and a new trial must result. The burden of proving no prejudice is on the beneficiary of the error, here the state. The state's burden, then, is to establish that there is no reasonable possibility that the error contributed to the conviction.

*Dyess,* 124 Wis. 2d at 543 (citation and footnote omitted).

¶ 41. The court considered this test for harmless error to be essentially consistent with the test for prejudice in an ineffective assistance of counsel claim under *Strickland v. Washington,* 466 U.S. 668 (1984). *See Dyess,* 124 Wis. 2d at 544. The court did, however, note a distinction in the burden of proof: ordinarily, the one who benefits from the error must prove harmlessness, but in an ineffective assistance of counsel claim, the defendant must prove prejudice. See *id.* at 544 n.11. The court also made reference to *Strickland's* use of the

phrase "reasonable probability" rather than "reasonable possibility," but said the two had the same meaning:

> Although the Court [in *Strickland*] uses the words, "reasonable probability" of a different outcome, in contrast to our use of "reasonable possibility," it is clear from the *Strickland* opinion that the Supreme Court's test is substantively the same as ours. The Supreme Court uses the word "probability," in the sense of likelihood. It explains that for a different outcome to be "reasonably probable" it need not be "more likely than not"; a reasonable probability of a different outcome is one that raises a reasonable doubt about guilt, a "probability sufficient to undermine confidence in the outcome" of the proceeding.

*Dyess,* 124 at 544–45 (citations omitted).

¶ 42. *Kuntz* went a step further, and, consistent with the broad holding of *Dyess,* applied harmless error analysis to instructional error of constitutional dimension. In *Kuntz,* this court held that the use of a jury instruction containing a mandatory conclusive presumption on an elemental fact was constitutional error, but the error nevertheless was subject to application of the harmless error rule. *Kuntz,* 160 Wis. 2d at 738.

¶ 43. In *Kuntz,* the trial court had instructed the jury that "a mobile home is a building" for purposes of the charged offense of arson of a building. *Id.* at 734. This court viewed the instruction as an unconstitutional mandatory conclusive presumption on an element of the offense, but concluded that it was harmless, applying the framework of the concurring opinion in *Carella,* which advocated a more restrictive approach to harmless error analysis in the context of conclusive presumptions. *See id.* at 738–40; *see also Carella,* 491 U.S. at 267–73 (Scalia, J., concurring).

¶ 44. In *Neder,* however, the United States Supreme Court specifically rejected the more restrictive

464

approach of the *Carella* concurrence, 527 U.S. at 13–14, opting instead for the harmless error analysis of *Chapman v. California,* 386 U.S. 18 (1967):

> Having concluded that the omission of an element is an error that is subject to the harmless-error analysis, the question remains whether Neder's conviction can stand because the error was harmless. In *Chapman v. California, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967),* we set forth the test for determining whether a constitutional error is harmless. That test, we said, is whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *386 U.S. at 24; see Delaware v. Van Arsdall, 475 U.S. 673, 681, 89 L. Ed. 2d 674, 106 S. Ct. 1431 (1986)* ("An otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt").

*Neder,* 527 U.S. at 15–16.

¶ 45. Accordingly, while the *Kuntz* test for harmless error in the context of unconstitutional conclusive presumptions (based as it was on the now-rejected approach of the *Carella* concurrence) has been called into question, the basic proposition of the case—that this type of constitutional instructional error is indeed subject to harmless error analysis—has been validated by *Neder.*

¶ 46. The Supreme Court majority in *Neder* canvassed the harmless error rule as applied to a variety of constitutionally-based errors, ultimately concluding that the same, *Chapman*-based test controlled, although it stated the test in somewhat different language:

> We think, therefore, that the harmless-error inquiry must be essentially the same: Is it clear beyond a reasonable doubt that a rational jury would have found

the defendant guilty absent the error? To set a barrier so high that it could never be surmounted would justify the very criticism that spawned the harmless-error doctrine in the first place: "Reversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it."

*Neder,* 527 U.S. at 18.

■

¶ 47. Applying *Neder* here, we conclude that the constitutional instructional error in this case was harmless beyond a reasonable doubt.[12] The error consisted of an instruction that the jury must accept the judicially-noticed elemental fact as true, which operated as a mandatory conclusive presumption in violation of Harvey's due process and jury trial rights. Had the jury been instructed that it may, but need not, accept the judicially-noticed elemental fact as true, there would have been no constitutional violation, because the instruction would have operated as a permissive inference rather than a conclusive presumption.

¶ 48. The elemental fact on which the jury was improperly instructed is undisputed and indisputable:

---

[12] The dissent correctly notes that at oral argument, the State was ambivalent about harmless error analysis, and that no one cited *Neder v. United States,* 527 U.S. 1 (1999). Dissent at ¶ 68. The harmless error rule, however, is an injunction on the courts, which, if applicable, the courts are required to address regardless of whether the parties do. *See* Wis. Stat. § 805.18(2) (specifying that no judgment shall be reversed unless the court determines, after examining the entire record, that the error complained of has affected the substantial rights of a party).

Penn Park is a city park, and no one says otherwise.[13] Accordingly, it is clear beyond a reasonable doubt that a properly instructed, rational jury would have found the defendant guilty of the enhanced offense.[14] Under these circumstances, the error cannot have contributed to the verdict.

¶ 49. Therefore, while we conclude that the judicial notice jury instruction, as applied to the "city park" element of the enhanced drug offense in this case, operated as a mandatory conclusive presumption in violation of Harvey's Fifth and Sixth Amendment rights, we nevertheless affirm his conviction. A constitutional or other error is harmless if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Neder,* 527

---

[13] As the court of appeals noted, "[t]hat Penn Park is a city park may be readily verified by contacting the City of Madison Parks Division, consulting its publications, or even by visiting its website (*http://www.ci.madison.wi.us/parks*)." *State v. Harvey,* 2001 WI App 59, ¶ 8, 242 Wis. 2d 189, 625 N.W.2d 892. We reject Harvey's alternative argument that the circuit court abused its discretion by failing to state for the record the basis upon which it was taking judicial notice that Penn Park is a city park. Penn Park's status as a city park is independently and readily verifiable, and in any event, is not disputed.

[14] It is odd that the dissent would assert that this opinion "views *Neder* as abandoning the *Chapman* harmless-error test." Dissent at ¶ 58. We do not. *Neder* reaffirmed and refined the *Chapman* harmless error test, it did not abandon it. The Court's use of somewhat different language in restating the test can be viewed as a further clarification of what it takes to meet the test; that is, that in order to conclude that an error "did not contribute to the verdict" within the meaning of *Chapman,* a court must be able to conclude "beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Neder,* 527 U.S. at 18.

U.S. at 18. By this standard, this error was harmless beyond a reasonable doubt.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 50. N. PATRICK CROOKS, J. *(concurring).* I agree with the majority's decision today and write separately only to comment on the harmless error analysis. For at least the past 38 years, this court has wrestled with formulating a standard for harmless error. *See, e.g., State v. Grant,* 139 Wis. 2d 45, 406 N.W.2d 744 (1987); *Wold v. State,* 57 Wis. 2d 344, 356–57, 204 N.W.2d 482 (1973); *State v. Spring,* 48 Wis. 2d 333, 339–40, 179 N.W.2d 841 (1970); *Pulaski v. State,* 24 Wis. 2d 450, 456–57, 129 N.W.2d 204 (1964). The previous standard, applied in several recent decisions, *see, e.g., Green v. Smith,* 2001 WI 109, 245 Wis. 2d 772, 629 N.W.2d 727; *Koffman v. Leichtfuss,* 2001 WI 111, 246 Wis. 2d 31, 630 N.W.2d 201; *Evelyn C.R. v. Tykila S.,* 2001 WI 110, 246 Wis. 2d 1, 629 N.W.2d 768; *Martindale v. Ripp,* 2001 WI 113, 246 Wis. 2d 67, 629 N.W.2d 698; *Nommensen v. American Cont'l Ins. Co.,* 2001 WI 112, 246 Wis. 2d 132, 629 N.W.2d 301, was whether there existed a reasonable possibility that the error contributed to the outcome, and that a reasonable possibility is one sufficient to undermine confidence in the outcome. *See State v. Dyess,* 124 Wis. 2d 525, 543–545, 370 N.W.2d 222 (1985). I have written dissents or concurrences in those recent decisions urging the court to clarify that *Dyess'* use of the term "reasonable possibility" was intended to require "reasonable probability." The majority opinion recognizes, at ¶ 41, that in *Dyess* we stated that those two terms had the same meaning.

¶ 51. I write, then, only to note that the harmless error dispute is finally put to rest in Wisconsin, at least

in criminal cases, both by the majority opinion here and in *State v. Tomlinson,* 2002 WI 91, 254 Wis. 2d 502, 648 N.W.2d 367. By establishing that an error is harmless if "it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error," *Neder v. United States,* 527 U.S. 1, 18 (1999), this court has finally corrected the confusion by no longer relying on the term "reasonable possibility." The majority, in ¶ 46, has set forth the language from *Neder* that explains the reason why the United States Supreme Court stated the harmless error rule in the manner it did.

> To set a barrier so high that it could never be surmounted would justify the very criticism that spawned the harmless-error doctrine in the first place: "Reversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it."

*Neder,* 527 U.S. at 18. (quoting Roger J. Traynor, *The Riddle of Harmless Error* 50 (1970)).

¶ 52. I wholeheartedly agree with this articulation of the justification for a common sense harmless error rule—one that looks at whether it is clear, beyond a reasonable doubt that absent the error, a rational jury would have reached the same verdict.[1]

¶ 53. For these reasons, I respectfully concur.

¶ 54. I am authorized to state that Justice JON P. WILCOX joins this concurrence.

¶ 55. SHIRLEY S. ABRAHAMSON, CHIEF JUS-

---

[1] I respectfully disagree with the dissenting opinion's position that this test, adopted by the majority here and in *State v. Tomlinson,* 2002 WI 91, 254 Wis. 2d 502, 648 N.W.2d 367, "ignore[s] the *Chapman* approach" and "misstates the U.S. Supreme Court's harmless-error test." Dissent, ¶ 75.

TICE *(dissenting)*. The circuit court instructed the jury in the present case that it had taken judicial notice of the fact that Penn Park is a city park and explicitly "directed" the jury to accept that fact as true. That the area in question is a city park is a penalty-enhancing element of this drug offense.

¶ 56. The majority opinion concludes that the mandatory nature of the instruction on this element of the enhanced drug offense was constitutional error. I agree.

¶ 57. The majority opinion then concludes that the constitutional error was harmless error. I agree with the majority opinion that a harmless-error analysis may be applied to an instructional error of constitutional dimension. This court so held in *State v. Kuntz,* 160 Wis. 2d 722, 735, 467 N.W.2d 531 (1991).

¶ 58. I disagree with the majority opinion, however, when it abandons *Kuntz* and adopts *Neder v. United States,* 527 U.S. 1 (1999), the U.S. Supreme Court's most recent twist and turn in this area of the law. I also disagree with the majority opinion when it views *Neder* as abandoning the *Chapman*[1] harmless-error test.

I

¶ 59. I would not abandon *Kuntz.* In *Kuntz,* this court adopted the reasoning of Justice Antonin Scalia in his concurring opinion in *Carella v. California,* 491 U.S. 263 (1989): The harmless-error rule applies in limited circumstances when a trial court uses a mandatory conclusive presumption regarding an element of a crime.

¶ 60. The present case does not fall within one of the limited circumstances specified by *Kuntz* and it does

---

[1] *Chapman v. California,* 386 U.S. 18, 24 (1967).

not fall within Justice Scalia's concurrence in *Carella*. Nor does the *Neder* case fall within one of those limited exceptions in which Justice Scalia and *Kuntz* would apply the harmless-error rule.

¶ 61. *Neder* narrowly holds that an erroneous jury instruction that omitted an element of an offense is subject to a harmless-error analysis when evidence of the omitted element is overwhelming and uncontested. One commentator quipped that *Neder* has "elevated the 'no harm, no foul' policy over reasoned analysis"[2] and is "a bad call."[3]

¶ 62. The majority opinion applies *Neder* to the present case in which, by contrast, the circuit court, over the objection of the defendant, instructed the jury that an element was satisfied by the court taking judicial notice of the element, even though no evidence regarding the element had been admitted and the circuit court did not state the basis for taking judicial notice.

¶ 63. Justice Scalia disagrees with the Court's expanded use of the harmless-error rule in *Neder*. Justice Scalia reasons that a court cannot direct a guilty verdict no matter how clear the defendant's culpability, because a directed verdict denies an accused the right to a trial by jury and presents a structural error that is not subject to harmless-error analysis.[4] Why then, Justice

---

[2] Linda A. Carter, *The Sporting Approach to Harmless Error in Criminal Cases: The Supreme Court's "No Harm, No Foul" Debacle in Neder v. United States,* 28 Am. J. Crim. L. 229, 239 (2001).

[3] *Id.*

[4] *Neder v. United States,* 527 U.S. 1, 30 (1999) (Scalia, J., concurring in part and dissenting in part). According to Justice Scalia, "[t]he very premise of structural-error review is that even convictions reflecting the 'right' result are reversed for the sake of protecting a basic right." *Id.* at 34.

Scalia asks, should "taking *one* of the elements of the crime away from the jury . . . be treated differently from taking *all* of them away—since failure to prove one, no less than failure to prove all, utterly prevents conviction"?[5] For Justice Scalia, allowing an appellate court to decide guilt or innocence on an element of a crime allows "appellate courts to trample over the jury's function."[6]

¶ 64. We are bound by the decisions of the U.S. Supreme Court in interpreting the U.S. Constitution. But we are not bound by the decisions of the U.S. Supreme Court in interpreting the Wisconsin Constitution.

¶ 65. Wisconsin jurisprudence supports interpreting the Wisconsin Constitution in accordance with the *Kuntz* decision. The drafters of the Wisconsin Constitution placed great importance on the right to a trial by jury. In Article I, Section 7, the Wisconsin Constitution guarantees an accused in a criminal action the right to a jury trial, stating in part that in "all criminal prosecutions the accused shall enjoy the right . . . to a speedy public trial by an impartial jury."[7]

¶ 66. To determine guilt, the fact-finder must first decide each element of a crime. The right to a jury trial,

---

[5] *Id.* at 33.

[6] *Id.* at 36.

Justice Scalia concluded in *Carella v. California*, 491 U.S. 263 (1989), that the use of mandatory conclusive presumptions is impermissible because in addition to "overriding [the] presumption of innocence with which the law endows the accused," it "invade[s] [the] fact-finding function which in a criminal case the law assigns solely to the jury." *Carella*, 491 U.S. at 268 (Scalia, J., concurring in the judgment) (internal citations omitted).

[7] Wis. Const. art. I, § 7.

therefore, means the right to a jury determination on every element of the crime charged. Because the people reserved in the constitution the "function of determining criminal guilt *to themselves, sitting as jurors,"[8]* then it is not within the power of the courts to cancel that reservation.

¶ 67. Justice Scalia's conclusion in his dissent in *Neder,* drawing upon Blackstone's admonition about making inroads on the powers of juries, should guide this court in interpreting the jury guarantee in the Wisconsin Constitution:

> And as for the ingredient of pragmatism (if the defendant is unquestionably guilty, why go through the trouble of trying him again?), it suffices to quote Blackstone once again:

> "[H]owever *convenient* [intrusions on the jury right] may appear at first, (as, doubtless, all arbitrary powers, well executed, are the most *convenient,)* yet let it be again remembered that delays and little inconveniences in the forms of justice are the price that all free nations must pay for their liberty in more substantial matters;

For a discussion of the history of this provision, see *State v. Hansford,* 219 Wis. 2d 226, 234–240, 580 N.W.2d 171 (1998).

Debate regarding the guarantee of a jury trial, as opposed to a bench trial, can be found in a speech to the members of the 1847–48 Wisconsin constitutional convention by Charles H. Lakin, who stated in part: "By the proposed amendment, if adopted, will be distinctly drawn between the bench and the jury box . . . . I wish to reinstate the ancient trial by jury, assigning to it its original prerogative and opening a great gulf between it and the bench . . . ." *Journal of the Convention to Form a Constitution for the State of Wisconsin,* 122 (1948). *See also Hansford,* 219 Wis. 2d at 235 n.12.

[8] *Neder,* 527 U.S. at 32 (Scalia, J., concurring in part and dissenting in part).

that these inroads upon this sacred bulwark of the nation are fundamentally opposite to the spirit of our constitution; and that, though begun in trifles, the precedent may gradually increase and spread to the utter disuse of juries in questions of the most momentous concern." 4 Blackstone, Commentaries 350. See also *Bollenbach v. United States,* 326 U.S. 607, 615 (1946).

Formal requirements are often scorned when they stand in the way of expediency. This Court, however, has an obligation to take a longer view.

*Neder,* 527 U.S. at 39–40.

## II

¶ 68. I would not abandon the *Chapman* harmless-error test. A second issue raised in the majority opinion relates to how the federal constitutional harmless-error test should be stated. The harmless-error doctrine has inspired several decades of commentary, criticism, skepticism, and attempted clarification.[9] Just a year ago this court debated harmless error in

[9] *See, e.g.,* Roger J. Traynor, *The Riddle of Harmless Error* (1970) (proposing several different variations of the harmless-error standard depending on the nature of the error); Harry T. Edwards, *Madison Lecture: To Err Is Human, But Not Always Harmless: When Should Legal Error Be Tolerated,* 70 N.Y.U. L. Rev. 1167, 1199 (1995) (expressing skepticism that "in practical application we can ever solve the riddle of harmless error").

*See also* James Edward Wicht III, *There Is No Such Thing as a Harmless Constitutional Error: Returning to a Rule of Automatic Reversal ,* 12 B.Y.U. Pub. L. 73 (1997); Gregory Mitchell, *Against "Overwhelming" Appellate Activism: Constraining Harmless Error Review,* 82 Calif. L. Rev. 1335 (1994); Vilija Bilaisis, *Harmless Error: Abettor of Courtroom Misconduct,* 74 J. Crim. L. & Criminology 457 (1983); Kent A. Tess-

several cases.[10] Our cases and scholarly commentary reveal that the doctrine of harmless error is a work in progress.[11] Indeed there may be several harmless-error tests depending on the nature of the error.[12]

¶ 69. The State did not argue the issue of harmless error in its brief in the present case. When the court raised the issue of harmless error at oral argument, the State explained that it was unsure how harmless error applied in the present case. The State asserted that the error in the present case might be viewed as harmless because the defendant did not challenge the status of the park at trial or on appeal. Nevertheless, the State acknowledged that the error could be viewed as significant because the wrong entity, the judge, had made the finding of fact. Neither party referred to the *Neder* case.

¶ 70. As I have written previously,[13] I do not think it is prudent that this court apply or modify our

Mattner, *Confusion in the Court: Wisconsin's Harmless Error Rule in Criminal Appeals* , 63 Marq. L. Rev. 643 (1980). For a discussion of reversible error and the review function, and a critique of Wisconsin case law, see Ruggero J. Aldisert, *The Judicial Process: Readings, Materials and Cases* 706–42 (1976).

[10] *See, e.g., In re Termination of Parental Rights to Jayton S.*, 2001 WI 110, 246 Wis. 2d 1, 629 N.W.2d 768; *Nommensen v. American Continental Ins. Co.*, 2001 WI 112, 246 Wis. 2d 132, 629 N.W.2d 301; *Martindale v. Ripp*, 2001 WI 113, 246 Wis. 2d 67, 629 N.W.2d 698.

[11] *See, e.g.,* 5 Wayne R. LaFave et al., *Criminal Procedure* § 27.6(b), at 938–39 (2d ed. 1999) ("Few areas of doctrinal development have been marked by greater twisting and turning than the development of standards for applying the harmless error rule.").

[12] *Jayton S.*, 246 Wis. 2d at 25 (Abrahamson, C.J., concurring).

[13] *Id.* at 23–26.

statement of the harmless-error doctrine without the benefit of briefing by both parties, oral argument on the issue, and an exploration of the federal and state cases and the historical development of the law.[14] The decision regarding harmless error is the court's, but a fundamental premise of our adversary system is that advocates will present useful information and arguments that a court might not uncover.[15]

¶ 71. The majority opinion recognizes that the U.S. Supreme Court takes two different approaches to harmless error in *Neder. See* majority op. at ¶ 46. The first approach asks whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained" and comes from *Chapman v. California,* 386 U.S. 18, 24 (1967). *See Neder,* 527 U.S. at 15, 17, 18, 19; majority op. at ¶ 44.

¶ 72. The second approach, which is set forth without citation in *Neder,* asks whether it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Neder,* 527 U.S. at 18; majority op. at ¶ 46. The majority opinion then uses this second approach to assess harmless error. Majority op. at ¶ 47.

¶ 73. There is a different emphasis in the two approaches. The first inquires whether the constitutional error contributed to the conviction, while the second inquires whether the untainted evidence provides overwhelming support for the conviction. Professor LaFave analyzes the various U.S. Supreme Court cases discussing these two approaches and concludes

---

[14] *See also State v. Grant ,* 139 Wis. 2d 45, 88, 406 N.W.2d 744 (1987) (Abrahamson, C.J., concurring).

[15] Adam A. Milani and Michael R. Smith, *Playing God: A Critical Look at Sua Sponte Decisions by Appellate Courts,* 69 Tenn. L. Rev. 245 (2002).

that "the Court has appeared to move back and forth between relying heavily upon the presence of proof of guilt in its harmless error analysis, and considering that proof as less central to the inquiry."[16]

¶ 74. The "presence of proof of guilt analysis" embodied in the second approach has been criticized as usurping the fact-finding function that the Sixth Amendment entrusts to a jury, particularly when applying harmless-error review to conclusive mandatory presumptions.[17] Courts should refrain from "interposing themselves into the process as some sort of 'super-jury.' "[18]

¶ 75. The majority and concurring opinions apparently prefer to ignore the *Chapman* approach entirely and adopt only the second approach. The opinions thus misstate the U.S. Supreme Court's harmless-error test and turn a blind eye to the fluid nature and nuances of the U.S. Supreme Court constitutional harmless-error case law.

¶ 76. For the reasons set forth, I dissent.

¶ 77. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

---

[16] 5 Wayne R. LaFave, *Criminal Procedure* § 27.6(e), at 958–59 (2d ed. 1999). *See also State v. McCallum,* 208 Wis. 2d 463, 489–90, 561 N.W.2d 707 (1997) (Abrahamson, C.J., concurring).

[17] John M.M. Greabe, *Spelling Guilt Out of a Record? Harmless-Error Review of Conclusive Mandatory Presumptions and Elemental Misdescriptions,* 74 B.U. L. Rev. 819 (1994).

[18] *Id.*