State of Wisconsin, Petitioner-Respondent,
v.
Ruven Seibert, Respondent-Appellant.
No. 03-1995.
Court of Appeals of Wisconsin.
Opinion Filed: May 4, 2004.
Before Cane, C.J., Hoover, P.J., and Peterson, J.
¶1 PER CURIAM.
Ruven Seibert appeals an order denying his petition for supervised release under WIS. STAT. ch. 980.[1] Seibert argues there was insufficient evidence to support the trial court's denial of his petition for supervised release. We reject Seibert's arguments and affirm the order.

BACKGROUND
¶2 In 1996, a jury found Seibert to be a sexually violent person within the meaning of WIS. STAT. ch. 980. The present appeal arises from the trial court's May 16, 2003, order denying Seibert's petition for supervised release.
¶3 At the hearing on Seibert's petition for supervised release, Dr. David E. Warner, a licensed psychologist, testified that Seibert suffers from a mental disorder as defined by WIS. STAT. ch. 980 and that his diagnosis was the same as those that were contained in previous evaluations. Specifically, Warner opined that Seibert suffers from paraphilia not otherwise specified, nonconsent, and from personality disorder not otherwise specified, with antisocial features.[2] Warner further testified that these are congenital or acquired conditions affecting Seibert's emotional or volitional capacity, that the conditions predispose Seibert to engage in acts of sexual violence and cause Seibert serious difficulty in controlling his behavior.
¶4 Warner scored Seibert on two actuarial instruments, and determined that Seibert was in the high-risk category for reoffending on both instruments. Warner additionally considered other risk variables consisting of Seibert's deviant sexual interests and distorted attitudes, his self-management skills, socio-affective functioning and criminogenic significant others. Further, Warner concluded that Seibert's lack of progress in treatment indicated his risk of reoffense had not changed through treatment. Warner also considered whether Seibert's age, sixtyfour years old, mitigated the risk of reoffense and concluded that the age factor does not necessarily apply to high-risk individuals such as Seibert. Finally, Warner testified that Seibert's risk could not be managed in the community.
¶5 In turn, Dr. Hollida Wakefield testified that Seibert does not meet the criteria for either the paraphelia or sexual deviancy diagnoses. Wakefield concluded there was no evidence to support the proposition that Seibert became sexually aroused by the concept of nonconsent. Rather, Wakefield explained that Seibert may have been imagining that the victim did consent, or he may not have cared whether the victim consented. With respect to the evidence of personality disorder, Wakefield indicated that individuals with this diagnosis tend to "burn out" as they get older. With respect to his risk of reoffending, Wakefield testified that denial of the offense is not a factor in recidivism and the rate of recidivism for sex offenders was less than four percent after the age of sixty.
¶6 Dr. Ralph Underwager testified that the use of actuarial instruments alone was inadequate for predicting recidivism because the instruments do not take into account the individual characteristics of the patient. Specifically, Underwager testified that the instruments did not take into account the fact that Seibert suffered from adult onset diabetes and high blood pressure and was highly motivated to change.
¶7 Ultimately, the trial court found Warner's testimony more credible and denied Seibert's petition for supervised release. The court concluded that Seibert was still a sexually violent person and that it was still substantially probable that he would engage in acts of sexual violence if he did not remain under institutional care. This appeal follows.

DISCUSSION
¶8 Whether to grant a petition for supervised release is a discretionary decision for the circuit court. See State v. Seibert, 220 Wis. 2d 308, 314, 582 N.W.2d 745 (Ct. App. 1998). We review the trial court's discretionary decision to determine whether the trial court examined the relevant facts, applied the proper legal standard and, using a rational process, reached a reasonable conclusion. See Loy v. Bunderson, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982). The standard of review for sufficiency of the evidence to support a commitment under WIS. STAT. ch. 980 is the same as the standard of review for a criminal conviction. State v. Curiel, 227 Wis. 2d 389, 417, 597 N.W.2d 697 (1999). WISCONSIN STAT. § 980.08(4) governs petitions for supervised release and provides, in relevant part:
The court shall grant the petition unless the State proves by clear and convincing evidence that the person is still a sexually violent person and that it is still substantially probable that the person will engage in acts of sexual violence if the person is not continued in institutional care. In making a decision under this subsection, the court may consider, without limitation because of enumeration, the nature and circumstances of the behavior that was the basis of the allegation in the petition, ... the person's mental history and present mental condition, where the person will live, how the person will support himself or herself and what arrangements are available to ensure that the person has access to and will participate in necessary treatment.
¶9 Here, Seibert initially argues that because Warner did not personally examine Seibert but, rather, "merely relied upon diagnoses ... made by other doctors in the past," there was insufficient evidence to establish that he currently suffers from a mental disorder predisposing him to commit a crime of sexual violence. We are not persuaded.
¶10 Warner did not merely adopt the diagnoses of past doctors, but arrived at the same diagnoses as those contained in Seibert's previous evaluations. Although Seibert refused Warner's request for an interview, Warner diagnosed Seibert using records consisting of previous reports of other experts, the criminal complaint, a presentence investigation report and records from the Wisconsin Resource Center, Sand Ridge Secure Treatment Center and the Department of Corrections. Seibert cites no legal requirement that an expert must conduct a personal interview of the subject of a WIS. STAT. ch. 980 proceeding before making a diagnosis of a current mental disorder. To the extent Seibert intimates his experts were more credible because they personally examined him, the credibility of witnesses and the weight given their testimony are matters left to the trier of fact. State v. Friedrich, 135 Wis. 2d 1, 16, 398 N.W.2d 763 (1987).
¶11 Seibert also argues that the State failed to establish that he is substantially likely to reoffend unless he is kept in a secure setting. Seibert contends that Warner's reliance on actuarial instruments provided nothing more than a general likelihood of reoffense as applied to the population of sex offenders. Seibert additionally emphasizes Warner's statement that "I can't say anything about [Seibert's] individual risk of reoffending."
¶12 In context, however, Warner merely indicated that the actuarial risk tables are not "predictions" and declined to assign a numerical percentage of recidivism risk to Seibert. Rather, Warner explained that the tables indicate that individuals who share similar offense histories and types of victims have been shown to be convicted of a new sex offense at that rate. Warner, however, unequivocally expressed his opinion that Seibert is substantially probable to engage in future acts of sexual violence and that Seibert is not appropriate for supervised release. Contrary to Seibert's assertion, Warner's opinion related to Seibert as an individual, using behaviors and personality traits specific to Seibert.
¶13 Next, Seibert argues the trial court impermissibly engaged in burden shifting by failing to consider him for release absent treatment program completion. Seibert also claims that the trial court's focus on Seibert's failure to complete the treatment program erroneously ignores the possibility for a mental condition to spontaneously resolve itself as a consequence of aging or other factors. We are not persuaded.
¶14 The trial court expressly acknowledged that the State had the burden of proof at the hearing. Seibert nevertheless emphasizes Warner's statement that "People don't go anywhere until they've done that." In context, however, Warner testified that Seibert's failure to complete treatment put him at a high risk to reoffend. Warner clarified that acknowledgement of sex offenses is the starting point in the sex-offender treatment program. Thus, Warner's statement referred to the necessity of acknowledging sex offenses as a starting point in the treatment process, not to the necessity of completing treatment before being considered for release. Here, the court did not simply focus on Seibert's failure to complete treatment. Rather, the court cited Warner's opinion, parts of Seibert's experts' opinions, Seibert's mental disorders, deviant criminal and sexual behavior, the risk assessment, absence of a relapse prevention plan, as well as Seibert's lack of treatment success.
¶15 Finally, Seibert contends the trial court erroneously considered evidence outside the record in denying his petition for supervised release. Specifically, based on his contention that Warner simply adopted prior diagnoses, Seibert contends that the reports of prior examinations were not a part of the record. Seibert's own expert, however, reviewed reports of examinations performed by other experts prior to the present proceeding and acknowledged that the diagnosis of paraphilia had consistently appeared in the examiners' reports since 1995. Since the filing of the initial petition for commitment in December 1995, numerous reports evaluating Seibert's mental condition and dangerousness were filed with the court. These reports are part of the record of the case, regardless of whether they were admitted in this particular hearing. Moreover, the court is expressly permitted to consider Seibert's mental history and present mental condition. WIS. STAT. § 980.08(4).
¶16 Siebert also challenges the trial court's reference to David Spanbauer. In explaining why it did not believe Seibert's age was the determinative factor in assessing the risk of recidivism, the court stated that it was "familiar with the David Spanbauer case, and age did not lessen David Spanbauer's deviant, violent sexual behavior." The court continued, "What does that indicate? It indicates that it's based on every individual's specific history and personality and their own mental disorders." We conclude that the error, if any, in referring to Spanbauer was harmless.
¶17 "A constitutional or other error is harmless if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." State v. Harvey, 2002 WI 93, ¶49, 254 Wis. 2d 442, 647 N.W.2d 189. The trial court's reference to Spanbauer was a small part of the court's explanation of its decision to deny supervised release. The court heard evidence of research showing that some older offenders do commit additional sex offenses. Thus, any error in referring to Spanbauer did not affect Seibert's substantial rights, as the result would be no different if the trial court had never heard of Spanbauer. Because the evidence was sufficient to establish that Seibert is still a sexually violent person and that it was still substantially probable that he would engage in acts of sexual violence if he did not remain under institutional care, the trial court properly denied Seibert's petition for supervised release.
By the Court.  Order affirmed.
NOTES
[1] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] At the hearing, Warner clarified that paraphilias in general are recurrent urges or interest in sexual activities that may involve children. Warner opined that Seibert met the diagnosis criteria for paraphilia not otherwise specified nonconsent because he has "a lengthy history of sexual assaults on victims who are not willing to be sexually assaulted, and there's clear evidence from the file information that he was sexually aroused during these assaults." With respect to the other diagnosis, Warner explained that Seibert "exhibits a large number of antisocial personality characteristics but he doesn't meet the diagnostic criteria for antisocial personality disorder because he doesn't have a documented history of antisocial behavior prior to the age of fifteen."