STATE of Wisconsin, Plaintiff-Respondent,

v.

Ronell E. HARRIS, Defendant-Appellant-Petitioner.

Supreme Court

*No. 2006AP882–CR. Oral argument January 17, 2008.
—Decided March 6, 2008.*

2008 WI 15

(Also reported in 745 N.W.2d 397.)

557

559

561

For the defendant-appellant-petitioner there were briefs by *Ralph J. Sczygelski* and *Sczygelski Law Firm, LLC,* Manitowoc, and oral argument by *Ralph J. Sczygelski.*

For the plaintiff-respondent the cause was argued by *Anne Murphy,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. The defendant, Ronell E. Harris, seeks review of an unpublished decision of the court of appeals[1] affirming a judgment and order of the Circuit Court for Sheboygan County, Terence T. Bourke, Judge. The circuit court convicted the defendant of possession with the intent to deliver more than 40 grams of cocaine or cocaine base contrary

---

[1] *State v. Harris,* No. 2006AP882–CR, unpublished slip op. (Wis. Ct. App. June 13, 2007).

to Wis. Stat. § 961.41(1m)(cm)4. (2003–04).[2] The circuit court denied the defendant's postconviction motion seeking a new trial.

¶ 2. Five issues are presented on review to determine whether the circuit court erred in denying the defendant's motion for a new trial:

I. Did the State violate Wis. Stat. § 971.23(1) (the criminal discovery statute) or the defendant's constitutional right to due process by failing to disclose timely written police reports stating that law enforcement officers unsuccessfully attempted to obtain identifiable fingerprints from a plastic baggie containing cocaine allegedly belonging to the defendant? If so, was the defendant prejudiced by the State's statutory violation and the admission of evidence or testimony regarding fingerprint evidence?

II. Did the State violate Wis. Stat. § 971.23(1) (the criminal discovery statute) by failing to disclose timely the defendant's request to put on a particular pair of pants? If so, was the defendant prejudiced by the violation?

III. Did the circuit court err in failing to strike evidence of the defendant's criminal history after the State's witness referred to a document as "a court bail bond, some kind of court paperwork for [the defendant]" and then a "recognizance of bond in a criminal case . . . a posting of $1,000 by the defendant"? If so, was the error prejudicial?

IV. If the State violated Wis. Stat. § 971.23(1) (the criminal discovery statute), did the circuit court err in failing to sanction the State for the violation?

V. Are the errors, when viewed cumulatively, prejudicial errors warranting a new trial?

[2] All subsequent references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

¶ 3. We conclude as follows:

I. The State violated Wis. Stat. § 971.23(1) (the criminal discovery statute) by failing to disclose timely the police reports. The defendant's *Brady* due process rights were not violated.[3] The State's statutory violation and the admission of the evidence were not prejudicial.

II. The State violated Wis. Stat. § 971.23(1) (the criminal discovery statute) by failing to disclose timely the defendant's alleged statement asking for the pants that he put on. The circuit court excluded the evidence. The State's statutory violation was not prejudicial.

III. The circuit court erred in failing to strike evidence of the defendant's criminal history. The admission of the evidence was not prejudicial error.

IV. The circuit court erred in failing to sanction the State for violating Wis. Stat. § 971.23 (the criminal discovery statute). The error was not prejudicial.

V. The errors, when viewed cumulatively, are not prejudicial errors warranting a new trial.

¶ 4. For the reasons set forth, we affirm the decision of the court of appeals affirming the circuit court's judgment of conviction and the circuit court's order denying the defendant's postconviction motion for a new trial.

¶ 5. We briefly summarize the facts relating to the defendant's trial, conviction, and postconviction motion for a new trial and shall detail the facts further in the parts of the opinion discussing the legal issues presented.

___

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

565

¶ 6. The case that the State presented at the defendant's jury trial on the charge of possession of cocaine with intent to deliver consisted essentially of the following evidence:

- While law enforcement officers were executing a search warrant in a Sheboygan apartment, they discovered the defendant on a sofa in the residence;

- The officers discovered a plastic baggie containing a substance later determined to be 62 grams of crack cocaine (the contraband alleged to be possessed by the defendant) in the pocket of a green denim jacket that was hanging on a closet door in a bedroom of the apartment;

- The officers discovered a duffel bag underneath the green denim jacket, and the defendant admitted that the duffel bag was his;

- The officers discovered two documents on top of the duffel bag that bore the defendant's name;

- The duffel bag contained plastic baggies (although no contraband);

- Shortly after the officers entered the apartment, the defendant put on a pair of green denim pants without any suggestion from the officers to do so;

- The green denim pants that the defendant put on had been lying near the defendant before he put them on;

- The green denim pants that the defendant put on matched, in color, size, and brand, the jacket containing the plastic baggie of cocaine;

- Both the pants and the matching jacket were an appropriate size for the defendant;

- Although other persons were known to live in the apartment, none was similar in size to the defendant;

- The officers discovered $615.00 inside the green denim pants put on by the defendant; and

- Law enforcement officers discovered a wallet in the apartment containing the defendant's photo identification card.

¶ 7. At his trial, the defendant argued that the State's case consisted entirely of circumstantial evidence and adduced the following evidence in his favor:

- Multiple other persons in the apartment were known to be involved in drugs; and

- A document with the name of one of those persons was discovered in the same bedroom in which law enforcement officers discovered the cocaine alleged to belong to the defendant.

¶ 8. After the State filed an information against him, the defendant moved for discovery from the State. The defendant's motion demanded that the State disclose, among other items:

- "A written summary of all oral statements of the defendant that the state plans to use at trial and the names of witnesses to the defendant's oral statements";

- "Any and all relevant written or recorded statements of a witness" that the State intends to call at trial; and

- "Any exculpatory evidence . . . including but not limited to . . . [a]ll evidence and/or other information that would tend to negate the guilt of the defendant . . . [and] [a]ll evidence and/or other information that would tend to affect the weight or credibility of the evidence against the defendant."

¶ 9. The defendant's trial lasted one day. The jury found the defendant guilty of possessing cocaine with intent to deliver.

¶ 10. Before sentencing, the defendant moved for a new trial based on the State's failure to disclose timely both exculpatory evidence and statements made by the defendant that the State planned to introduce at trial.

¶ 11. The circuit court sentenced the defendant to five years' confinement and five years' extended supervision.

¶ 12. After sentencing, the defendant moved for postconviction relief, again requesting a new trial, based on the prosecutor's withholding relevant information and on co-actors' being sentenced less harshly. The circuit court again denied the defendant's motion for a new trial.

I

¶ 13. We first consider whether the State violated Wis. Stat. § 971.23(1)(e) and (h) (or the defendant's *Brady* constitutional right to due process) by failing to disclose timely the written police reports stating that law enforcement officers unsuccessfully attempted to obtain identifiable fingerprints from a plastic baggie containing cocaine allegedly belonging to the defendant. We then consider whether any violation of the discovery statute or admission of the fingerprint evidence resulted in prejudicial error.

■

¶ 14. *The Criminal Discovery Statute.* Wisconsin Stat. § 971.23(1)(e) and (h) provide in relevant part that the district attorney shall, within a reasonable time before trial, disclose to the defendant any relevant written or recorded statements of a named witness, the

568

results of any scientific test, and any exculpatory evidence. These provisions state as follows:

> Upon demand, the district attorney shall, within a reasonable time before trial, disclose to the defendant or his or her attorney and permit the defendant or his or her attorney to inspect and copy or photograph all of the following materials and information, if it is within the possession, custody or control of the state:
>
> . . . .
>
> (e) Any relevant written or recorded statements of a witness named on a list under par. (d), including any videotaped oral statement of a child under s. 908.08, any reports or statements of experts made in connection with the case or, if an expert does not prepare a report or statement, a written summary of the expert's findings or the subject matter of his or her testimony, and the results of any physical or mental examination, scientific test, experiment or comparison that the district attorney intends to offer in evidence at trial.
>
> . . . .
>
> (h) Any exculpatory evidence.

■■■■

¶ 15. *Standard of Review.* The interpretation and application of Wis. Stat. § 971.23(1)(e) and (h) to a given set of facts, as in the instant case, presents a question of law that we review independently of the circuit court and court of appeals but benefiting from their analyses.[4] If this court concludes that the State violated its statutory discovery obligation, this court must then determine whether the State has shown good cause for the violation and, if not, whether the defendant was

---

[4] *State v. DeLao,* 2002 WI 49, ¶ 14, 252 Wis. 2d 289, 643 N.W.2d 480.

prejudiced by the evidence or testimony.[5] These issues are also questions of law for this court to review independently of the circuit court and court of appeals but benefiting from their analyses.[6]

¶ 16. *Facts.* Two reports were disclosed to the defendant on the day of trial. One was disclosed immediately before trial. A second was disclosed during the lunch hour during the trial.

¶ 17. On the morning of the trial, ten minutes prior to the commencement of proceedings, the prosecutor notified defense counsel of a written report authored by a Sheboygan police officer whom the State planned to call as a witness at trial. The report stated, among other things, that during an interview conducted at the Sheboygan County Detention Center, a law enforcement officer asked the defendant "if there would be any reason why his fingerprints would be on the packing of [the] cocaine" at issue. According to the report, the defendant responded that "he could think of no reason why his fingerprints would be on any such an item."

¶ 18. Outside the presence of the jury, defense counsel objected to the State's untimely disclosure of this report. The circuit court asked the prosecutor whether he intended "to bring in anything about fingerprints." The prosecutor replied that he intended to tell the jury only that law enforcement officers "weren't able to get any [fingerprints] from the bag."

¶ 19. Defense counsel objected to the prosecutor's failure to inform defense counsel timely that law enforcement officers had attempted to obtain fingerprints from the plastic baggie. Defense counsel asked the

---

[5] *DeLao,* 252 Wis. 2d 289, ¶ 15.

[6] *Id.*

circuit court to bar the State from asking its witnesses whether they tried to obtain fingerprints from the baggie containing the cocaine.

¶ 20. The defendant's prime argument was (and continues to be) that the State's tardy disclosure of the fingerprint reports disrupted the defendant's trial strategy. Defense counsel explained that based on the evidence that the State had timely disclosed to the defendant, defense counsel intended to ask the State's witnesses whether they had sent various items of evidence "to the drug crime lab in Madison to have it tested for fingerprints." Defense counsel's strategy was to show that the investigation was shoddy.

¶ 21. After extended discussion, the circuit court instructed the prosecutor not to raise the fingerprint issue on direct examination but informed defense counsel that if defense counsel brought it up on cross, then defense counsel would open the door and the prosecutor could bring it up on redirect.

¶ 22. During his opening statement, defense counsel made the following claim: "There's not a single witness who's going to provide evidence that any piece of evidence inside that apartment has any of my client's fingerprints on it. None of that testing took place."

¶ 23. During the trial, the State called Investigator Patton as a witness. On cross-examination defense counsel asked the investigator the following question: "[Y]ou certainly had the drugs tested for fingerprints, didn't you?" The investigator replied, "Yes, sir, I did. I had the plastic baggie checked for fingerprints."

¶ 24. Upon hearing this answer, defense counsel immediately made a motion to strike and requested that the jury be cleared from the courtroom. Defense counsel had expected the witness to answer "no."

¶ 25. The circuit court refused to clear the jury from the courtroom but agreed to discuss defense counsel's motion in chambers outside the jury's presence. In chambers, defense counsel contended that the investigator's answer to the question suggested that the baggie had been scientifically tested for fingerprints in contrast to the prosecutor's assurance that no scientific testing had been performed. Defense counsel moved for a mistrial on the ground that the State had failed to disclose exculpatory evidence about the lack of identifiable fingerprints on the baggie containing cocaine.

¶ 26. The circuit court excused the jury for lunch and asked the investigator what he meant when he testified that he "had the plastic baggie checked for fingerprints." The investigator informed the circuit court that he had attempted but failed to locate identifiable fingerprints on the baggie using a "latent print processing" technique.

¶ 27. In ruling on the prosecutor's tardiness in making the first report available to the defendant, the circuit court decided that the report on the fingerprints should have been disclosed earlier but that the defense was not prejudiced by the late disclosure.

¶ 28. After the lunch recess, the prosecutor disclosed a second report to the defendant. This report confirmed the investigator's testimony that he had attempted but failed to obtain identifiable fingerprints from the plastic baggie containing the cocaine. This report was in a co-actor's file in the prosecutor's office, not in the defendant's file in the prosecutor's office. The prosecutor had located this second report during the lunch recess.

¶ 29. The circuit court admitted this second report as an exhibit, but at defense counsel's request the circuit court did not provide the report to the jury.

Defense counsel renewed his motion for a mistrial. Defense counsel complained that the State's untimely disclosures had forced defense counsel to alter his strategy three times before and during the trial. The circuit court again denied the defendant's motion for mistrial, asserting that no prejudice had been shown. Defense counsel asserted at the postconviction hearing that faced with this fingerprint evidence at trial, he was not prepared to cross-examine the State's witness about fingerprinting.

¶ 30. The circuit court agreed with defense counsel that the State should have disclosed the second report earlier. The circuit court concluded, however, that the investigator's testimony was consistent with the prosecutor's earlier representation about the fingerprint information and that checking the baggie for fingerprints was not the same as conducting scientific testing. The circuit court further ruled that the fingerprint information did not favor either the State or the defense and that the defendant was not prejudiced by the late disclosure of the fingerprint information.

¶ 31. *State Violated Criminal Discovery Statute.* We agree with the State that the prosecutor had a duty under Wis. Stat. § 971.23(1)(e) and (h) to disclose the two reports regarding the State's unsuccessful attempt to obtain identifiable fingerprints from the plastic baggie.[7]

¶ 32. The reports at issue clearly fall within the scope of Wis. Stat. § 971.23(1)(e). Each report was authored by one of the State's witnesses; the State

---

[7] *See* Brief of Plaintiff-Respondent (State) at 16 (agreeing that the prosecutor had a duty under the discovery statute to disclose the reports timely).

intended to call the witnesses. Each report therefore qualifies as a "relevant written . . . statement[] of" a witness whom the district attorney intended to call at trial.

¶ 33. The reports also fall within Wis. Stat. § 971.23(1)(h). As the circuit court explained in its decision denying the defendant's motion for a new trial, the information contained in the reports "is exculpatory because it could raise a question with a juror as to why testing would be attempted if law enforcement was certain that the Defendant was the one who had possessed the crack cocaine in question."

¶ 34. The State argues, however, that the disclosure was timely. The State urges that the prosecutor met his statutory obligation by disclosing the reports on the day of trial. The State reasons that the reports were promptly turned over to the defense as soon as the prosecutor found them.[8] The State contends that the discovery statute "obviously contemplates situations such as this, where evidence that was not known to either party is belatedly found and turned over to the other party on the day of trial, in compliance with the discovery statute."[9]

██

¶ 35. We disagree with the State's assertion that the State was timely in disclosing the reports. Section 971.23(1) requires the district attorney to disclose, "within a reasonable time before trial," exculpatory evidence if such evidence "is within the possession, custody or control of the state." The State does not

---

[8] *Id.*

[9] *Id. See* Wis. Stat. § 971.23(7) (providing a continuing duty on the part of the prosecutor to notify the defendant promptly of the existence of additional material).

dispute that long before the defendant's trial, the State possessed and controlled the reports in question. The first report, stating that a law enforcement officer asked the defendant "if there would be any reason why his fingerprints would be on the packing of [the] cocaine," is dated May 13, 2004. The second report, stating that Investigator Patton attempted but failed to obtain identifiable prints from the baggie, is dated July 14, 2004. The defendant's trial was not held until September 17, 2004. Indeed, the prosecutor conceded at trial that the latter of the two reports "was in our office apparently for a couple months."

¶ 36. The State did not have good cause for failing to disclose the two reports. We understand that many district attorneys' offices are short-staffed and the workload is heavy.[10] Nevertheless, accuseds whose lives and liberty are at stake have statutory and constitutional rights to information in the district attorney's possession to enable them to prepare adequately for trial. "If there is to be pretrial discovery, broad or limited, in criminal cases, defense counsel should be able to rely upon evidence as disclosed by the state; otherwise, the purpose of discovery is frustrated and more injustice is done than if no discovery were allowed."[11]

¶ 37. The prosecutor has a special role in the federal and Wisconsin criminal justice systems. The United States Supreme Court has described the United

---

[10] Wis. Dep't of Admin., Rpt. 07–9, *An Evaluation: Allocation of Prosecutor Positions* at 5, 24, App. 5–2 (2007), *available at* http://www.legis.wisconsin.gov/lab/reports/07–9Full.pdf (showing a need for more than 100 additional prosecutors across the state).

[11] *Wold v. State,* 57 Wis. 2d 344, 351, 204 N.W.2d 482 (1973).

States Attorney as "the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done."[12] Our court and the Wisconsin Attorney General have similarly described the role of the Wisconsin prosecutor.[13]

¶ 38. The special status of the prosecutor explains the basis for the prosecutor's duty of disclosure and that not every violation of the duty results in a reversal of a conviction.[14]

■

¶ 39. It is of no moment under the criminal discovery statute that the State was unaware until the day before the trial or during the trial that it possessed the reports in question when the information was in the district attorney's files and could have been located before trial had the files been examined with reasonable

---

[12] *Berger v. United States*, 295 U.S. 78, 88 (1935) (*quoted with approval in Strickler v. Greene*, 527 U.S. 263, 281 (1999)).

[13] *State v. Harrell*, 199 Wis. 2d 654, 662, 546 N.W.2d 115 (1996) (quoting *Berger*, 295 U.S. at 88, and concluding that "[g]overnment prosecutors in this state hold true to similar ideals"); *Nelson v. State*, 59 Wis. 2d 474, 483, 208 N.W.2d 410 (1973) (quoting *Berger* in a case involving a state prosecutor)).

Wisconsin Attorney General J.B. Van Hollen recently portrayed the role of prosecutors as agents of justice as follows: "[The work of prosecutors] is more than putting people behind bars. It includes ... ensuring that criminal proceedings are fair .... Prosecutors are not zealous advocates for the state. They are advocates for justice." http://www.thewheelerreport .com/releases/Feb08/feb13/0213vanhollendas.pdf (last visited Feb. 27, 2008).

[14] *Strickler v. Greene*, 527 U.S. 263, 281 (1999).

diligence. The prosecutor's belated discovery of the evidence in his possession did not absolve the prosecutor of his duty under Wis. Stat. § 971.23(1) to reveal the evidence within a reasonable time before trial. The prosecutor's duty is to seek to know of the existence of reports that should be disclosed.[15] The test of whether evidence "should be disclosed is not whether in fact the prosecutor knows of its existence but, rather, whether by the exercise of due diligence the prosecutor should have discovered it."[16]

¶ 40. We agree with the court of appeals' observation "that the [prosecutor's] office less than carefully handled the information that fingerprints could not be lifted from the baggie." The court of appeals was correct in concluding, and we emphasize, that "the report should have been maintained [in the district attorney's office] in such a fashion as to be included in the State's response to [the defendant's] pretrial discovery requests."[17]

■

¶ 41. *Harmless Error.* Having determined that the State violated Wis. Stat. § 971.23(1)(e) and (h) without good cause, we address the question whether the statutory violation and the admission of the fingerprint evidence were prejudicial to the defendant's case, requiring a new trial.[18] When evidence that violates

---

[15] *Wold,* 57 Wis. 2d at 350.

[16] *DeLao,* 252 Wis. 2d 289, ¶ 22 (citation, brackets, internal quotation marks omitted).

[17] *State v. Harris,* No. 2006AP882–CR, unpublished slip op., ¶ 12 (Wis. Ct. App. June 13, 2007).

[18] A prosecutor's violation of the criminal discovery statute, as well as the admission of any evidence that should have been excluded under Wis. Stat. § 971.23, may be prejudicial. *State v.*

Wis. Stat. § 971.23 is not excluded, the defendant is not automatically entitled to a new trial.[19]

¶ 42. This court has formulated the test for harmless or prejudicial error in a variety of ways.[20] The United States Supreme Court set forth a test for harmless error in *Chapman v. California,* 386 U.S. 18 (1967), *reh'g denied,* 386 U.S. 987 (1967). Under *Chapman,* the error is harmless if the beneficiary of the error proves "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."[21] In *State v. Harris,* 2004 WI 64, ¶¶ 27, 30–31, 33, 34, 272 Wis. 2d 80, 680 N.W.2d 737, a case involving a request to withdraw a guilty plea based on the State's violation of the criminal discovery statute, the court declared that the standard is whether the State's nondisclosure of the evidence sufficiently undermines the court's confidence in the outcome of the judicial proceeding.[22]

---

*Harris,* 2004 WI 64, ¶ 39, 272 Wis. 2d 80, 680 N.W.2d 737 (State's violation of the discovery statute results in a serious flaw in the fundamental integrity of a judicial proceeding involving a guilty plea, allowing withdrawal of the plea); *DeLao,* 252 Wis. 2d 289, ¶¶ 59–60 (admission of evidence that should have been excluded under Wis. Stat. § 971.23, if prejudicial, entitles defendant to new trial).

[19] *DeLao,* 252 Wis. 2d 289, ¶ 60 (citations omitted).

[20] *See, e.g., State v. Mayo,* 2007 WI 78, ¶ 47, 301 Wis. 2d 642, 734 N.W.2d 115; *State v. Anderson,* 2006 WI 77, ¶¶ 114–15, 291 Wis. 2d 673, 717 N.W.2d 74.

[21] *Chapman v. California,* 386 U.S. 18, 24 (1967), *reh'g denied,* 386 U.S. 987 (1967); *Mayo,* 301 Wis. 2d 642, ¶ 47; *Anderson,* 291 Wis. 2d 673, ¶ 114.

[22] A reviewing court may consider any adverse effect that the prosecutor's failure to respond might have had on the preparation or presentation of a defendant's case. The reviewing court should assess whether any such effect "might have occurred in light of the totality of the circumstances and with an

¶ 43. "In recent years, the United States Supreme Court and this court, while adhering to the *Chapman* test, have also articulated alternative wording. *See, e.g., Neder v. United States,* 527 U.S. 1, 2–3 (1999); *State v. Weed,* 2003 WI 85, ¶ 29, 263 Wis. 2d 434, 666 N.W.2d 485; *State v. Harvey,* 2002 WI 93, ¶ 48, n.14, 254 Wis. 2d 442, 647 N.W.2d 189."[23] The *Neder/Harvey* test for harmless error asks whether it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error."[24]

¶ 44. We apply both harmless error tests in the present case.

■

¶ 45. This court has articulated several factors to aid in the harmless error analysis, including the frequency of the error, the importance of the erroneously admitted evidence, the presence or absence of evidence corroborating or contradicting the erroneously admitted evidence, whether the erroneously admitted evi-

awareness of the difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense not been misled by the prosecutor's incomplete response." *United States v. Bagley,* 473 U.S. 667, 683 (1985).

With regard to *Brady* disclosure, "[t]he burden rests with the defendant to establish that the 'lateness of that disclosure so prejudiced [defendant's] preparation or presentation of his defense that he was prevented from receiving his constitutionally guaranteed fair trial.' " 6 Wayne R. LaFave et al., *Criminal Procedure* § 24.3(b) at 365 (3d ed. 2007) (citations omitted).

[23] *Anderson,* 291 Wis. 2d 673, ¶ 115 (quotation marks, parallel citation, and footnote omitted).

[24] *Id.* (quoting *State v. Harvey,* 2002 WI 93, ¶ 46, 254 Wis. 2d 442, 647 N.W.2d 189 (quoting *Neder v. United States,* 527 U.S. 1, 18 (1999))). *See also Mayo,* 301 Wis. 2d 642, ¶ 47.

dence duplicates untainted evidence, the nature of the defense, the nature of the State's case, and the overall strength of the State's case.[25]

¶ 46. The defendant contends that the State's untimely disclosure of the police reports and the circuit court's admission of the fingerprint evidence significantly disrupted defense counsel's strategy and performance at trial.[26] The defendant explains that defense counsel originally intended to argue to the jury that law enforcement officers had conducted a shoddy investigation. According to the defendant, defense counsel was attempting to further this line of argument when he stated in his opening argument that no fingerprint testing had been done. The defendant contends that defense counsel was pursuing the same "shoddy investigation" argument when he asked a State witness, on the assumption that the answer to counsel's question would be "no," whether fingerprint testing had been conducted. The defendant urges that the fingerprint evidence disrupted defense counsel's strategy by forcing counsel to abandon his "shoddy investigation" argument.

¶ 47. The defendant additionally argues that the State's untimely disclosure meant that defense counsel did not have time to digest and fully understand the fingerprinting that was done, thereby leading to confusion, frustration and mistakes on defense counsel's part. The defendant contends that defense counsel was led to tell the jury incorrectly that no fingerprint

---

[25] *Mayo*, 301 Wis. 2d 642, ¶ 48; *State v. Norman*, 2003 WI 72, ¶ 48, 262 Wis. 2d 506, 664 N.W.2d 97; *State v. Billings*, 110 Wis. 2d 661, 668–70, 329 N.W.2d 192 (1983).

[26] A lawyer who has to change tactics in mid-trial through no fault of the defendant or defense counsel has been prejudiced. *DeLao*, 252 Wis. 2d 289, ¶ 61.

testing had been done and was forced to object to a witness's statement that defense counsel himself had elicited.

¶ 48. We review the totality of the circumstances to determine harmless error. We recognize that it is difficult in a post-trial proceeding to reconstruct the course defense counsel and the circuit court would have taken had the State fulfilled its discovery obligation. We agree with the defendant that the State's untimely disclosure of the police reports and the circuit court's admission of the reports may have required defense counsel to adjust to the newly disclosed information as the trial progressed. Nevertheless, upon study of the record we conclude that the State's failure to disclose the reports timely and the circuit court's admission of the fingerprint evidence did not significantly disrupt counsel's strategy and performance at trial; defense counsel was able to adjust to the untimely-disclosed evidence.

¶ 49. Defense counsel's opening argument was consistent with the information that the prosecutor had provided to him immediately before trial. Defense counsel explained in his opening argument that there was a difference between circumstantial evidence and what defense counsel termed "real evidence." Defense counsel told the jury that the State had no "real evidence" against the defendant. Defense counsel specifically noted that "[t]here's not a single witness who's going to provide evidence that any piece of evidence inside that apartment has any of my client's fingerprints on it. None of that testing took place." Defense counsel's prediction that not a single witness would provide evidence that any piece of evidence inside the apartment had the defendant's fingerprints on it was correct.

581

¶ 50. Although defense counsel's statement that fingerprint testing did not take place is arguably inconsistent with the investigator's attempt to lift fingerprints from the baggie, the investigator's failure to obtain fingerprints corroborated defense counsel's argument that the State had only circumstantial evidence, and no "real evidence," against the defendant. Defense counsel initiated the following exchange between himself and Investigator Patton that was favorable to the defense:

> Q. Isn't it true that when you requested fingerprint testing on that evidence you wanted to see if my client's were on that bag?
>
> A. Yes, sir.
>
> Q. And isn't it true that you also wanted to see if somebody else's fingerprints were on that bag?
>
> A. If that was the case. I mean, I'm not just focusing on the defendant. If there were other prints, I would look at that as an investigator, yes, sir.
>
> Q. Because as an investigator you didn't learn of any information that anyone saw my client wearing that coat; isn't that true?
>
> A. That's correct, sir.
>
> Q. So you wanted to do everything that you possibly could to make sure that you were charging the right person with that crime; isn't that true?
>
> A. I try to.
>
> Q. Because you didn't know that my client ever touched that bag; isn't that true?
>
> A. I didn't have eyewitness or something, scientific fact perhaps that he touched the bag.

¶ 51. In sum, we conclude that the State's failure to disclose the reports timely and the circuit court's admission of the reports did not significantly disrupt counsel's strategy or performance at trial.

¶ 52. Furthermore, the state had strong evidence (without the fingerprint evidence) linking the defendant to the baggie with cocaine: the baggie was found in a jacket that matched the pants the defendant voluntarily put on, and the jacket and pants were the defendant's size. The circuit court concluded that even if the fingerprint information had been disclosed in a timely fashion, the defendant would have been convicted.

¶ 53. The defendant relies upon *State v. DelReal,* 225 Wis. 2d 565, 593 N.W.2d 461 (Ct. App. 1999), in contending that the State's failure to disclose fingerprint information timely was prejudicial. The defendant's reliance on *DelReal* is misplaced.

¶ 54. In *DelReal,* law enforcement officers took DelReal into custody shortly after he allegedly fired a gun. Although DelReal's hands were swabbed for gunshot residue, the State did not disclose to defense counsel that the swabbing had taken place and did not test the swabs to determine whether there was gunshot residue on DelReal's hands.

¶ 55. One of the State's witnesses testified at trial that DelReal's hands had been swabbed for gunshot residue. Other testimony was that the swabbing had not been done.[27] During the trial, defense counsel was unable to determine whether DelReal's hands had in fact been swabbed. The circuit court struck all testimony regarding the swabbing on the ground that it was irrelevant.

---

[27] *State v. DelReal,* 225 Wis. 2d 565, 593 N.W.2d 461 (Ct. App. 1999).

¶ 56. After DelReal's conviction, defense counsel learned that law enforcement officers had in fact swabbed DelReal's hands but that the swabs had never been tested to determine whether gunshot residue was present. After trial the swabs were tested and failed to reveal a sufficient amount of gunshot residue on Del-Real to yield a positive finding. An expert testified that a negative result is inconclusive. On appeal the court of appeals deemed this evidence relevant and exculpatory in nature and concluded that the State had failed to disclose the evidence.

¶ 57. In *DelReal,* defense counsel was not aware that DelReal's hands had been swabbed until after DelReal's trial; was unable to determine the results of the swab until after DelReal's trial; and was never permitted the opportunity to present to the jury the evidence that DelReal's hands did not have a significant amount of gunshot residue. According to the court of appeals, the negative test result would have had some weight and could have supplied a favorable inference of DelReal's innocence.

¶ 58. *DelReal* is significantly different from the present case. In the present case, defense counsel learned of the reports about the fingerprints before and during the defendant's trial and was able to present to the jury the arguably exculpatory evidence that no fingerprints were lifted from the baggie. The absence of identifiable fingerprints does not completely or even partially exonerate the defendant. The fingerprint evidence, however, did support defense counsel's argument that no scientific evidence linked the defendant to the drug operation.

¶ 59. In sum, under either statement of the harmless error test, the State's failure to provide the defendant in the present case with the fingerprint evidence earlier and the circuit court's admission of the evidence

were not prejudicial. We agree, however, with the court of appeals that in an appropriate case the prosecutor's failure to disclose the reports timely could be held to be prejudicial.[28]

¶ 60. *No Brady Violation.* The defendant further argues that he is entitled to a new trial as a matter of law because the State violated his constitutional right to due process when it failed to disclose timely the reports indicating that law enforcement officers unsuccessfully attempted to obtain identifiable fingerprints from the plastic baggie containing the cocaine allegedly possessed by the defendant.

¶ 61. In *Brady v. Maryland,* 373 U.S. 83, (1963), the United States Supreme Court held that under the Due Process Clause of the Fourteenth Amendment, a defendant has a constitutional right to evidence favorable to the accused and that a defendant's due process right is violated when favorable evidence is suppressed by the State either willfully or inadvertently, and when prejudice has ensued.[29] Prejudice means that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a

---

[28] *State v. Harris,* No. 2006AP882–CR, unpublished slip op. ¶ 12 (Wis. Ct. App. June 13, 2007).

[29] *Harris,* 272 Wis. 2d 80, ¶ 15 (citing *Strickler,* 527 U.S. at 281–82).

In *Brady,* 373 U.S. at 87, the Court stated the *Brady* rule as follows: "[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is *material* either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (emphasis added).

As this court has recognized, *Brady*'s requirement of materiality encompasses the concept of prejudice. *Harris,* 272 Wis. 2d 80, ¶ 15.

probability sufficient to undermine confidence in the outcome."[30] In other words, "strictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."[31]

¶ 62. Thus a *Brady* violation entails prejudice to the accused and necessarily entitles the defendant to a new trial. When a "prosecutor violates his duty of disclosure under the Constitution, he will be 'punished' by having the illegally obtained conviction or sentence overturned."[32]

¶ 63. *Brady* does not require pretrial disclosure of exculpatory evidence.[33] *Brady* instead requires that the

---

[30] *United States v. Bagley*, 473 U.S. 667, 682 (1985).

[31] *Strickler*, 527 U.S. at 281.

[32] *State v. Ruiz*, 118 Wis. 2d 177, 195, 347 N.W.2d 352 (1984).

[33] *Harris*, 272 Wis. 2d 80, ¶ 37 (quotation marks and citations omitted).

*See also* 6 LaFave et al., *supra* note 22, § 24.3(b) at 364 & n.63 (concluding that the lower federal courts "agree that the *Brady* rule does not impose a general requirement of pretrial disclosure of [material] exculpatory evidence" and that due process instead "requires only that disclosure of exculpatory evidence be made in sufficient time to permit [the] defendant to make effective use of that evidence at trial"; collecting cases).

Professor LaFave explains that "[d]epending upon the nature of the evidence, this standard may sometimes require pretrial disclosure," although "[f]or most exculpatory evidence, the prosecution should be able to satisfy its constitutional obligation by disclosure at trial." 6 LaFave et al., *supra* note 22, § 24.3(b) at 364–65.

prosecution disclose evidence to the defendant in time for its effective use.[34]

¶ 64. The State argues that the prosecutor's failure in the instant case to disclose the fingerprint evidence earlier did not violate *Brady* because the evidence was not "material" to guilt or punishment. We agree with the State. As we explained previously, the defendant was not prejudiced in preparation or presentation by the prosecutor's failure to disclose the evidence earlier. Accordingly, under *Brady* the defendant's due process rights were not violated by the State's failure to disclose earlier the written reports or by the admission of the fingerprint evidence.

## II

¶ 65. The next issue is whether the State violated Wis. Stat. § 971.23(1)(b) by failing to disclose timely the defendant's alleged statement asking for the green pants that he put on.[35] The circuit court excluded the witness's testimony about the defendant's statement.

¶ 66. *The Criminal Discovery Statute.* Wisconsin Stat. § 971.23(1)(b) provides in relevant part that the district attorney shall, within a reasonable time before trial, disclose to the defendant a written summary of all oral statements of the defendant that the district attorney plans to use in the course of the trial and the names of witnesses to the defendant's oral statements. The disclosure statute provides as follows:

---

[34] *State v. Harris,* 272 Wis. 2d 80, ¶ 37 (quotation marks and citations omitted).

[35] The defendant does not argue that a *Brady* violation occurred in this instance. The *Brady* rule pertains only to evidence that is favorable to the defendant *Harris,* 272 Wis. 2d 80, ¶ 15 (citing *Strickler,* 527 U.S. at 281–82).

Upon demand, the district attorney shall, within a reasonable time before trial, disclose to the defendant or his or her attorney and permit the defendant or his or her attorney to inspect and copy or photograph all of the following materials and information, if it is within the possession, custody or control of the state:

. . . .

(b) A written summary of all oral statements of the defendant which the district attorney plans to use in the course of the trial and the names of witnesses to the defendant's oral statements.

¶ 67. *Standard of Review.* The interpretation and application of Wis. Stat. § 971.23(1)(b) to a given set of facts presents a question of law that we review independent of the circuit court and court of appeals but benefiting from their analyses.[36]

¶ 68. *Facts.* Defense counsel did not learn of the defendant's asking for the green pants until Detective Bloedorn was testifying. Detective Bloedorn testified that when the defendant was handcuffed he was clad only in underwear, and that before being transported to jail the defendant asked for additional clothing. The detective further testified that "[t]here was a pair of, like, green denim jeans that [the defendant] asked to have." The pants were on the floor in front of the couch where the defendant was sitting. The detective also testified that the defendant "pointed out, indicated that he wanted to have that particular pair of pants."

¶ 69. Defense counsel objected to the officer's statements about the pants, arguing that defense counsel was not "provided any information that [the defendant] made this statement in discovery." Defense coun-

---

[36] *DeLao,* 252 Wis. 2d 289, ¶ 14.

sel stated that "[t]he information that [he] received was that [the defendant] of his own volition picked up a pair of pants on the floor and put them on." Defense counsel further explained that "[m]y client's in his underwear when the police come in. The difference between going and grabbing a pair of pants so you're not naked and saying I want those particular pants is significant."

¶ 70. The circuit court at first refused to strike Detective Bloedorn's reference to the defendant's asking for the green pants. Later the parties stipulated that Bloedorn's statement that the defendant "asked to put on" the green pants be stricken from the record, and the circuit court instructed the jury to disregard Bloedorn's reference to the defendant's asking for the green pants. The circuit court sanctioned the State for its untimely disclosure to the defendant by excluding the evidence.

¶ 71. Detective Roeseler testified that he also participated in the execution of the search warrant. Detective Roeseler testified that the green pants fit the defendant; that the defendant was fairly large in size and by far the biggest person in the apartment; and that the jacket was triple extra large in size. He testified that no one suggested to the defendant that he put on the green pants. According to Roeseler, the green pants contained $615 in cash, and Roeseler testified that in his experience the cash and the presence in the residence of drug manufacturing and distribution paraphernalia were hallmarks of a drug dealing operation.

¶ 72. The reference to the defendant's asking for the green pants was significant because the implication of the defendant's request was that the green pants belonged to the defendant and that the green pants tied the defendant to the green jacket that held the baggie with cocaine. The green jacket was found in a nearby

room and matched the color, size, and manufacturer of the pants the defendant put on. The jacket and pants were of a size to fit the defendant. The police found a duffel bag containing clothing and baggies. Detective Bloedorn further testified that when he asked the defendant who owned the duffel bag, the defendant stated that it belonged to him.

¶ 73. The State entered the green pants as evidence.

¶ 74. *State Violated Criminal Discovery Statute.* The parties disagree about whether the State violated the criminal discovery statute by failing to disclose timely the defendant's statement requesting the green pants. The State contends that the defendant's statement was not one that the district attorney "plan[ned] to use in the course of trial" and that the statement therefore was not subject to the prosecutor's duties under § 971.23(1)(b).

¶ 75. We assume for purposes of this review that the prosecutor planned to use the defendant's statement in the course of trial[37] and that the State violated the criminal discovery statute by failing to disclose timely the defendant's statement requesting the green pants.

¶ 76. *Harmless Error.* The defendant's position is that the State's violation of its discovery obligation and Bloedorn's statement regarding the pants were so prejudicial that a new trial is warranted.

---

[37] The test for whether the district attorney planned to use a statement in the course of trial is an objective one: "whether a reasonable prosecutor, exercising due diligence, should have known" of the evidence before trial, "and if so, whether a reasonable prosecutor would have planned to use [the evidence] in the course of trial." *DeLao,* 252 Wis. 2d 289, ¶ 33.

¶ 77. We recognize that the prosecution's evidence against the defendant is circumstantial and limited: it has the defendant's proximity to the drugs, the defendant's matching clothing, and the defendant's identifiers in the room. There was no confession, no witness who stated that the cocaine belonged to the defendant, no scientific testing (such as for fingerprints) that linked the defendant to the cocaine. Under these circumstances evidence of the defendant's ownership of the pants is important.

¶ 78. Although the defendant has a good point that his asking to put on the green pants does not have the same meaning as the act of putting on the pants, we conclude that the State's untimely disclosure of the defendant's alleged statement asking to put on the green pants had practically no effect on the defendant's trial.

¶ 79. The circuit court instructed the jury to disregard Bloedorn's reference to the defendant's statement about the pants. The officer's testimony that the defendant asked to put on the green pants was not substantially different from other, unchallenged testimony that the defendant put on the green pants of his own volition. A person's request to put on a pair of pants does not seem significantly more probative of ownership than a person's act of putting on the same pants of his or her own volition. Moreover, there was sufficient other evidence that the pants belonged to the defendant, including the defendant's proximity to where the pants were found and the fact that the pants fit the defendant.

¶ 80. In sum, we conclude that the State's untimely disclosure of the defendant's alleged statement asking to put on the green pants and Bloedorn's testimony that was stricken had practically no effect on the

defendant's trial. Under either statement of the harmless error test, the error was harmless.

### III

¶ 81. We next consider whether the circuit court erred in failing to strike the evidence of the defendant's criminal history. A State's witness referred to a document naming the defendant as "a court bail bond, some kind of court paperwork for [the defendant]" and then a "recognizance of bond in a criminal case . . . a posting of $1,000 by the defendant."

¶ 82. *Criminal History Generally Inadmissible.* Ordinarily evidence of a defendant's criminal history is not admissible because when such evidence is admitted, there can be an "overstrong tendency to believe the defendant guilty of the charge merely because he is a person likely to do such acts" and because of "the confusion of issues which might result from bringing in evidence of other crimes."[38] Evidence of a defendant's criminal history may serve as "an invitation to focus on an accused's character" and to "magnif[y] the risk that jurors will punish the accused for being a bad person regardless of his or her guilt of the crime charged."[39]

¶ 83. *Facts.* The State sought to introduce as evidence one of the documents bearing the defendant's

---

[38] *State v. Sullivan,* 216 Wis. 2d 768, 782–83, 576 N.W.2d 30 (1998) (citing *Whitty v. State,* 34 Wis. 2d 278, 149 N.W.2d 557 (1967)).

[39] *Sullivan,* 216 Wis. 2d at 783.

The parties both treat the question whether evidence of the defendant's criminal history was admissible as a question governed by Wis. Stat. § (Rule) 906.09.

Wisconsin Stat. § (Rule) 904.04(2) bars admission of evidence of other crimes to prove the character of a person in order

name that law enforcement officers discovered in the same bedroom in which the jacket that contained the baggie with cocaine was found. The prosecutor asked one of the arresting officers to identify the document. The document was presented to show that the defendant was entrenched on the premises. The officer identified the document as a "recognizance of bond in a criminal case . . . a posting of $1,000 by the defendant." Shortly before the State introduced the bond as evidence, the officer also referred to the bond as "a court bail bond, some kind of court paperwork for [the defendant]."

¶ 84. The defendant objected to the officer's description of the document and to admission of the recognizance bond as evidence. The circuit court received the bond as an exhibit but did not send the bond to the jury. The circuit court also barred the prosecutor from referring to the bond in the presence of the jury except as an "identifier" with the defendant's name on it.

¶ 85. *Standard of Review.* A circuit court's decision whether to admit or exclude evidence ordinarily lies within the circuit court's discretion.[40] This court will not disturb a circuit court's discretionary decision so long as the record reflects "the circuit court's reasoned application of the appropriate legal standard to

---

to show that the person acted in conformity therewith but allows such evidence under certain circumstances.

In addition, Wis. Stat. § (Rule) 904.03 permits a circuit court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."

[40] *Leitinger v. DBart, Inc.*, 2007 WI 84, ¶ 18, 302 Wis. 2d 110, 736 N.W.2d 1.

the relevant facts of the case."[41] Evidence erroneously admitted is subject to the harmless error rule.[42]

¶ 86. *The Circuit Court Erred in Failing to Strike Evidence of Defendant's Criminal History.* The State acknowledges that the evidence of the defendant's criminal history that it introduced at trial was inadmissible.[43] The circuit court acknowledged that the State, the defense counsel, and the circuit court had "dropped the ball" in the way the recognizance bond had been treated at trial. We agree with the State, defense counsel, and the circuit court, concluding that the State improperly introduced evidence of the defendant's criminal history when the State called the jury's attention to a recognizance bond bearing the defendant's name and when a State witness referred to the bond as "a court bail bond, some kind of court paperwork for [the defendant]" and then a "recognizance of bond in a criminal case . . . a posting of $1,000 by the defendant."

¶ 87. *Harmless Error.* The danger of the admission of evidence of the defendant's criminal history is clear. As the defendant argues in his brief, "[h]uman nature being what it is, most people would more easily find that an individual who has previous criminal cases would be more likely to commit yet another crime."[44]

¶ 88. The witness's two references to the document as "a court bail bond, some kind of court paper-

---

[41] *State v. Delgado,* 223 Wis. 2d 270, 281, 588 N.W.2d 1 (1999).

[42] *State v. Hale,* 2005 WI 7, ¶¶ 61–62, 277 Wis. 2d 593, 691 N.W.2d 637.

[43] Brief of Plaintiff-Respondent (State) at 26.

[44] Defendant-Appellant-Petitioner's Brief at 36.

work for [the defendant]" and a "recognizance of bond in a criminal case . . . a posting of $1,000 by the defendant" were the only evidence of the defendant's criminal history presented to the jury. The bond did not go to the jury.

¶ 89. Considering the infrequency of the error, doubt whether the jury fully understood the significance of these statements, and the State's, the defendant's, and the circuit court's attempts to limit any emphasis on the evidence, we determine, as did the circuit court, that the admission of evidence of the defendant's criminal history as an identifier had limited if any effect on the defendant's trial when the error is evaluated in the context of the entire circumstances of the case.

¶ 90. Under either statement of the harmless error test, the error in admitting criminal history evidence was harmless.

## IV

¶ 91. We concluded that the State violated its discovery obligation under Wis. Stat. § 971.23(1)(e) and § 971.23(1)(h) by failing to disclose timely the two reports relating to fingerprints and by failing to disclose timely the defendant's statement requesting the green pants. We turn to the defendant's assertion that the circuit court did not adequately sanction the State for violating its discovery obligations with regard to the fingerprint evidence.[45]

¶ 92. *Criminal Discovery Statute Authorizing Sanctions for State's Violation.* Wisconsin Stat.

---

[45] The defendant does not argue that the circuit court failed to sanction the State appropriately for violating its discovery obligations with regard to the defendant's statement asking for the green pants.

§ 971.23(7m) governs the remedies for a discovery violation. The statute provides several remedies.

¶ 93. Section 971.23(7m)(a) states that a circuit court "shall exclude any witness not listed or evidence not presented for inspection or copying required by this section, unless good cause is shown for failure to comply." Under Wis. Stat. § 971.23(7m)(a), "[a]bsent a showing of good cause, the evidence the State failed to disclose must be excluded."[46] Under § 971.23(7m)(a) the circuit court may grant a continuance or a recess.

¶ 94. Wisconsin Stat. § 971.23(7m)(b) provides that in lieu of or in addition to the sanctions provided in § 971.23(7m)(a), a circuit court may "advise the jury of any failure or refusal to disclose material or information required to be disclosed . . . or of any untimely disclosure of material or information required to be disclosed . . . ."

¶ 95. Section 971.23(7m) provides as follows:

(a) The court shall exclude any witness not listed or evidence not presented for inspection or copying required by this section, unless good cause is shown for failure to comply. The court may in appropriate cases grant the opposing party a recess or a continuance.

(b) In addition to or in lieu of any sanction specified in par. (a), a court may, subject to sub. (3), advise the jury of any failure or refusal to disclose material or information required to be disclosed under sub. (1) or (2m), or of any untimely disclosure of material or information required to be disclosed under sub. (1) or (2m).

¶ 96. *Standard of Review.* This court determines whether exclusion of evidence is statutorily mandated as a question of law to be determined by this court

---

[46] *DeLao,* 252 Wis. 2d 289, ¶ 51.

independent of the circuit court and court of appeals but benefiting from the analyses of these courts. The circuit court's discretionary decision under Wis. Stat. § 971.23(7m)(a) regarding granting a continuance or recess[47] and the circuit court's discretionary decision under § 971.23(7m)(b) whether to advise the jury about the State's misconduct, in lieu of or in addition to the sanctions provided in § 971.23(7m)(a), is reviewed under the erroneous exercise of discretion standard. We will not disturb a circuit court's discretionary decision so long as the record reflects "the circuit court's reasoned application of the appropriate legal standard to the relevant facts of the case."[48] "The penalty for the breach of disclosure should fit the nature of the proffered evidence and remove any harmful effect on the defendant."[49]

¶ 97. *Facts.* When the State made no showing that it had good cause to delay the disclosure of the fingerprint evidence, the defendant asked the circuit court to exclude any fingerprint evidence. The circuit court refused. The circuit court explained that it had determined that § 971.23(7m)(a) did not require exclusion of the evidence when "the evidence in question was exculpatory."[50] The circuit court also viewed the remedy of exclusion as too harsh a sanction against the prosecution in the present case.

---

[47] The less drastic and more favored remedy than exclusion of evidence for the State's violation of the criminal discovery statute is for the circuit court to grant a continuance or recess. *Tucker v. State,* 84 Wis. 2d 630, 640–41, 267 N.W.2d 630 (1978).

[48] *Delgado,* 223 Wis. 2d at 281.

[49] *DeLao,* 252 Wis. 2d 289, ¶ 60 (citation omitted).

[50] Although the fingerprint evidence was arguably exculpatory, defense counsel viewed the evidence as prejudicial because it adversely affected his trial strategy in defending the defendant.

¶ 98. In this court the defendant's brief recognizes that the circuit court's refusal to exclude the fingerprint evidence may have been appropriate inasmuch as exclusion might have misled the jury into thinking that law enforcement had not undertaken to check the fingerprints. The defendant asks this court to treat his motion for mistrial as a motion for a continuance or recess and to declare that the circuit court erred in failing to grant a continuance or recess.

¶ 99. The defendant further argues here that under the circumstances of the present case an alternative remedy was available under Wis. Stat. § 971.23(7m)(b), which he requested, and which the circuit court failed to grant.

¶ 100. Defense counsel requested that the circuit court give the State "a gentle admonishment in front of the jury" informing the jury that an issue of discovery relating to the fingerprint reports had come up, that the State had failed to notify the defendant timely of information in its possession, and that the circuit court had ruled on the matter. Defense counsel specifically requested that the circuit court inform the jury that defense counsel had received a report during lunch hour and that he should have received the report earlier.

¶ 101. The circuit court informed defense counsel that although it would not "say exactly what [defense counsel] suggested," the circuit court would explain to the jury "in neutral terms" what had happened. The circuit court stated it would explain the delay after defense counsel's objection to the fingerprint testimony and would do it in such a way as not to prejudice the defendant. The circuit court refused "to point the finger at the State" but agreed to "take [defense counsel] off the hook."

¶ 102. The circuit court couched its comments to the jury in terms of an apology to the jury for taking so long. The circuit court also informed the jury that "[w]hen [defense counsel] raised his objections, he was doing the right thing"; that "lawyers have an obligation to object"; and that "we've worked through that problem, and we've got it resolved . . . ." The circuit court did not address the nature of defense counsel's objection or the State's failure to comply timely with its discovery obligations.

¶ 103. The circuit court merely reminded the jury, as it had stated earlier in the preliminary instructions, that counsel had an obligation to state objections and that the matter at issue (Investigator Patton's testimony) to which defense counsel had objected had been resolved. This reminder was similar not only to the preliminary instruction about counsels' objections but also to the circuit court's later instruction to the jury about counsels' objections.[51]

■

¶ 104. *Circuit Court Erred In Failing to Sanction the State.* The circuit court explained that it did not impose the discretionary sanction of informing the jury that the State failed to disclose the fingerprint information "because the information was immaterial [that is, not prejudicial], and the State had inadvertently failed to provide this information in discovery."

¶ 105. This reasoning is not entirely sufficient. The State erred in not complying with timely disclosure of the reports as statutorily required. Although the effect of the State's failure to adhere to the criminal discovery statute on the defendant's trial strategy was not great and the admission of the evidence was not prejudicial, defense counsel was caught by surprise. A

[51] *See* Wis JI—Criminal 148 (2000).

defendant should not be surprised by two unproduced reports that were requested, were subject to discovery, and were in the prosecutor's possession. Under the circumstances of the present case, we agree with the defendant that the circuit court should have exercised its discretion to mitigate the effect, if any, of the State's failure to fulfill its statutory discovery obligations by advising the jury pursuant to § 971.23(7m)(b).

¶ 106. For the reasons set forth, we conclude that the circuit court erroneously exercised its discretion in failing to advise the jury that the State had failed to make timely disclosure of the reports to the defendant under the criminal discovery statute, even though the State's failure to abide by the criminal discovery statute was not prejudicial error.

¶ 107. *Harmless error.* We have already concluded that the State's failure to disclose timely the fingerprint evidence and the circuit court's admission of the fingerprint evidence were not prejudicial. In failing to sanction the State for its failure to disclose timely the fingerprint evidence, the circuit court missed an opportunity to mitigate any effect of the State's failure and the court's admission of the evidence. The circuit court's failure to sanction the State did not, however, cause additional harm to the defendant.

¶ 108. We conclude that the circuit court's failure to advise the jury that the State had failed to make timely disclosure to the defendant was harmless under either statement of the harmless error test.

V

¶ 109. The defendant argues that the cumulative effect of the errors is prejudicial and that a new trial

600

must result. The decision whether to grant a new trial generally lies within the discretion of the circuit court.[52] We will not disturb a circuit court's discretionary decision so long as the record reflects "the circuit court's reasoned application of the appropriate legal standard to the relevant facts of the case."[53]

¶ 110. The cumulative effect of several errors may, in certain instances, undermine a reviewing court's confidence in the outcome of a proceeding.[54] We therefore aggregate the effects of the multiple errors in determining whether their overall impact satisfies the standard for a new trial.

¶ 111. Whatever phrasing we use in applying a harmless error analysis in the instant case, the errors viewed cumulatively were harmless, not prejudicial.

---

[52] *State v. Carlson,* 2003 WI 40, ¶ 24, 261 Wis. 2d 97, 661 N.W.2d 51.

[53] *Delgado,* 223 Wis. 2d at 281.

[54] *State v. Thiel,* 2003 WI 111, ¶ 59, 264 Wis. 2d 571, 665 N.W.2d 305 (adopting, in an ineffective assistance of counsel case, the reasoning of the federal courts holding that prejudice should be assessed based on the cumulative effect of counsel's deficiencies); *Alvarez v. Boyd,* 225 F.3d 820, 824 (7th Cir. 2000) ("Trial errors which in isolation are harmless might, when aggregated, alter the course of a trial so as to violate a petitioner's right to due process of law.") (citations omitted); *United States v. Rivera,* 900 F.2d 1462, 1469 (10th Cir. 1990) ("The cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error."); *United States v. Wallace,* 848 F.2d 1464, 1472 (9th Cir. 1988) ("Even if each of these errors, by itself, is arguably harmless, their cumulative effect may well be prejudicial.").

¶ 112. We have concluded that the State's untimely disclosure of the fingerprint evidence and the admission of the fingerprint evidence did not significantly impair defense counsel's ability to argue that the State's circumstantial evidence did not establish beyond a reasonable doubt that the defendant was guilty of the crime charged; that the State's untimely disclosure of the defendant's statement asking to put on the green pants (and the exclusion of the defendant's statement) had no prejudicial effect on the defendant's trial; and that although the admission of evidence of the defendant's criminal history was erroneous, the evidence was not prejudicial. Although the circuit court erred in failing to admonish the State for its violations of the discovery statute, this error too was harmless.

¶ 113. It is the State's burden to prove that the errors are, in their cumulative effect, harmless and not prejudicial. The State has carried this burden under the facts of the present case. The State has demonstrated beyond a reasonable doubt that the aggregated errors did not, under the totality of the circumstances, contribute to the verdict against the defendant or undermine confidence in the verdict. Using an alternative phrasing of the test, the State has demonstrated beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the State's errors. Under the facts of the present case, the State's errors, viewed cumulatively, do not undermine our confidence in the outcome of the defendant's trial.

* * * *

¶ 114. We conclude as follows:

I. The State violated Wis. Stat. § 971.23(1) (the criminal discovery statute) by failing to disclose timely

the police reports. The defendant's *Brady* due process rights were not violated.[55] The State's statutory violation and the admission of the evidence were not prejudicial.

II. The State violated Wis. Stat. § 971.23(1)(the criminal discovery statute) by failing to disclose timely the defendant's alleged statement asking for the pants that he put on. The circuit court excluded the evidence. The State's statutory violation was not prejudicial.

III. The circuit court erred in failing to strike evidence of the defendant's criminal history. The admission of the evidence was not prejudicial error.

IV. The circuit court erred in failing to sanction the State for violating Wis. Stat. § 971.23 (the criminal discovery statute). The error was not prejudicial.

V. The errors, when viewed cumulatively, are not prejudicial errors warranting a new trial.

¶ 115. For the reasons set forth, we affirm the decision of the court of appeals affirming the circuit court's judgment of conviction and order denying the defendant's postconviction motion for a new trial.

*By the Court.*—The decision of the court of appeals is affirmed.

---

[55] *Brady v.* Maryland, 373 U.S. 83 (1963).