# COURT OF APPEALS
# DECISION
# DATED AND FILED

## September 10, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP2369-CR**

Cir. Ct. No. 2013CF2592

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MOEUN MAO,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Rock County: JAMES P. DALEY and KARL R. HANSON, Judges. *Affirmed.*

Before Blanchard, Kloppenburg, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Moeun Mao appeals a judgment convicting him of two counts of sexual assault for having sexual intercourse with and impregnating a developmentally disabled sixteen-year-old female, G.S.K., and an order denying his postconviction motion seeking a new trial due to the ineffective assistance of trial counsel, plain error, and in the interest of justice.[1] For the reasons that follow, we affirm.

## BACKGROUND

¶2 During the summer of 2013, Mao, then fifty-two years old, resided with G.S.K. and her father. Law enforcement began investigating reports that Mao had sexually assaulted G.S.K., who is cognitively delayed. During the course of the investigation, it was discovered that G.S.K. was pregnant. The results of DNA testing revealed a very high likelihood that Mao impregnated G.S.K.[2]

¶3 The State charged Mao with first-degree sexual assault causing pregnancy contrary to WIS. STAT. § 940.225(1)(a) (2017-18),[3] and second-degree sexual assault contrary to § 940.225(2)(c). In pertinent part, the first-degree charge (count one) criminalizes having sexual intercourse with another "without consent of that person[,]" see § 940.225(1)(a), and the statutory definition of consent provides that "[a] person suffering from a mental illness or defect which

---

[1] The Honorable James P. Daley presided at Mao's jury trial and entered the judgment of conviction. The Honorable Karl R. Hanson entered the order denying Mao's postconviction motion.

[2] As to the fetus' DNA profile, the lab technician testified at trial that "it is at least three million times more likely to observe that DNA profile from the product of conception if Moeun Mao is the [biological] father than if a random, unrelated male were the father."

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

impairs capacity to appraise personal conduct" is "presumed incapable of consent[,]" *see* § 940.225(4)(b).[4] The second-degree charge (count two) criminalizes sexual contact or intercourse with a person "who suffers from a mental illness or deficiency which renders that person temporarily or permanently incapable of appraising the person's conduct" if the defendant knows of the deficiency. Sec. 940.225(2)(c).

¶4 The case was tried to a jury. Several witnesses testified at trial about G.S.K.'s mental impairments. The county social worker who interviewed G.S.K. testified that G.S.K. had an intelligence quotient (IQ) of 50, which the social worker characterized as "really low" and indicative of low cognitive functioning. The social worker testified that G.S.K. suffered from cognitive deficits and delays, was diagnosed with fetal alcohol syndrome, and was unable to function without assistance. G.S.K. struggled with understanding cause and effect, had difficulty with abstract thinking, and made inappropriate decisions.

---

[4] WISCONSIN STAT. § 940.225(4) defines consent as follows:

> **(4) Consent**. "Consent," as used in this section, means words or overt actions by a person who is competent to give informed consent indicating a freely given agreement to have sexual intercourse or sexual contact…. The following persons are presumed incapable of consent but the presumption may be rebutted by competent evidence, subject to the provisions of s. 972.11(2):

> (b) A person suffering from a mental illness or defect which impairs capacity to appraise personal conduct.

> (c) A person who is unconscious or for any other reason is physically unable to communicate unwillingness to an act.

¶5 The detective who interviewed G.S.K. testified that G.S.K. acted "more like a younger child" than a sixteen-year-old. G.S.K.'s recorded interview was played for the jury, and she was briefly called by the State to testify.

¶6 G.S.K.'s older sister testified that, in the eight years since their mother died, the sister had acted as a mother figure for G.S.K. The sister had attended school meetings concerning G.S.K.'s educational plan. She described G.S.K.'s mental ability as "really delayed," recalling that at the last school meeting, G.S.K. was reading at a third-grade level. She testified that G.S.K. was unable to care for herself, explaining that she was "not capable of cooking for herself [,]" and could not drive, hold a job, or care for a child. The sister testified that when G.S.K. was told that she was pregnant she "didn't quite understand what was going on."

¶7 Similarly, the nurse who physically examined G.S.K. in connection with the sexual assault testified that G.S.K. "did not know her body parts. She could not name them." The nurse explained:

> What concerned me about [GSK], taking away the fetal alcohol syndrome, was her cognitive ability to understand the basic questions that I was asking her. She did not seem to understand basic sexual development as any other 16-year-old child that I have taken care of, nor did she understand her body parts compared to other 16-year-old children that I have taken care of. And that's what was concerning to me. When I was told that she had fetal alcohol syndrome, then things started to, you know, mesh a little bit, that this could be a cause of that. But the concern is that her cognitive ability -- she had no idea what had happened to her other than [that] she wasn't feeling right, that she was pregnant, and that she didn't really understand the questions that I was asking her as compared to other 16-year-old children that I have taken care of and knowing that I have taken care of many, many children.

4

¶8 At five points during trial, the prosecutor suggested to the jury that G.S.K.'s age satisfied the "without consent"[5] element of count one, first-degree sexual assault. During voir dire, the prosecutor asked panel members whether they believed "that a 16 year-old can consent to sexual contact in the state of Wisconsin legally?" During his opening statement, he told the jury that G.S.K. was "16 years old, so there's not a consent issue there. You can't consent at 16." While examining the State's first witness, he asked her "under Wisconsin law, can a 16-year-old consent to sexual contact?" The witness answered "no." He asked the second witness the same question, and received the same answer. The prosecutor's closing argument also referred several times to G.S.K.'s age as satisfying the lack-of-consent element. Trial counsel did not object to any of these statements.

¶9 The circuit court instructed the jury on the statutory elements of both offenses. In pertinent part, the court instructed the jury on count one as follows:

> "Did not consent" means that GSK did not freely agree to have sexual intercourse with the defendant or that GSK was not competent to give informed consent. In deciding whether GSK did not consent, you should consider what GSK said and did, along with all the other facts and circumstances. This element does not require that GSK offered physical resistance.

> A person is not competent to give informed consent if that person does not have the mental capacity to understand the nature and the consequence of having sexual intercourse. The burden is on the State to satisfy you by proof beyond a reasonable doubt, that GSK was not competent to give informed consent.

---

[5] WISCONSIN STAT. § 940.225(1)(a), uses the language "without consent." At times, we will refer to this as the lack-of-consent element.

¶10 Regarding the mental deficiency and incapacity element of count two, the circuit court instructed the jury as follows:

> Number one, the defendant had sexual intercourse with GSK.
>
> Number two, GSK suffered from a mental deficiency at the time of the sexual intercourse.
>
> Three, the mental deficiency rendered GSK temporarily or permanently incapable of appraising her conduct. In other words, GSK must have lacked the ability to evaluate the significance of her conduct because of her mental deficiency.
>
> Four, the defendant knew that GSK was suffering from a mental deficiency and knew that the mental condition rendered GSK temporarily or permanently incapable of appraising her conduct.
>
> ….
>
> Consent to sexual intercourse is not a defense. However, you may consider any words or actions of GSK indicating consent in determining whether GSK was suffering from a mental deficiency that rendered her incapable of appraising her conduct or whether the defendant knew that GSK was suffering from a mental deficiency that rendered her incapable of appraising her conduct.

¶11 The jury convicted Mao of both counts and he was sentenced.

¶12 Mao filed a postconviction motion for a new trial, asserting that the prosecutor had repeatedly misled the jury by stating that the "without consent" element on count one was satisfied by the fact that G.S.K. was sixteen-years old. Mao argued that this repeated misstatement of the law by the prosecutor also tainted the jury's verdict on count two. Because trial counsel did not object to the repeated misstatement, Mao raised the legal issue in three ways: (1) ineffective assistance of trial counsel; (2) plain error; and (3) in the interest of justice because the real controversy was not fully tried.

¶13    At an evidentiary ***Machner***[6] hearing, trial counsel testified that he largely did not recall the prosecutor's statements suggesting that the victim's age satisfied the lack-of-consent element.  Counsel explained that Mao had refused to accept a plea offer and maintained his innocence "so our defense at trial was it wasn't him."  Counsel also testified that he did not believe that a jury would believe that G.S.K. was competent to consent to sex because when she testified her "cognitive issues and delays" were "obviously clear" and "she clearly wasn't competent."

¶14    After additional briefing, the circuit court examined the language and history of Chapter 940, and concluded that G.S.K.'s age did not satisfy the "without consent" element.  As such, the prosecutor's statements of law were wrong, and trial counsel should have objected.  The court found that counsel had no strategic reason for not objecting, and determined that counsel performed deficiently.

¶15    The circuit court noted that the standard jury instruction was used in this case, and that "[t]here is no mention in the instruction provided to the jury regarding how GSK's age affects the elements or the State's burden."  The court went on to determine that counsel's deficient performance did not prejudice Mao. The court detailed the "overwhelming evidence that GSK was not competent to understand the nature and consequences of having sexual intercourse[,]" including witness testimony about her "level 50 IQ, and fetal alcohol syndrome diagnosis[,]" as well as her inability to care for herself or to comprehend her pregnancy.  The

---

[6] ***State v. Machner***, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979) (where a defendant claims he or she received the ineffective assistance of trial counsel, a postconviction hearing "is a prerequisite … on appeal to preserve the testimony of trial counsel").

court found that G.S.K.'s recorded interview and in-person testimony "both demonstrated the extent of [her] mental deficiency." Ultimately, the court determined that "there is not a reasonable probability that the jury's verdict regarding the first-degree sexual assault causing pregnancy would have been different had [trial counsel] objected to the misstatements of law presented by the State."

¶16    The circuit court went on to reject Mao's other claims. Mao appeals.

## DISCUSSION

*Ineffective Assistance of Counsel*

¶17    As pertinent to the issues on appeal, the elements of count one, first-degree sexual assault, are that (1) Mao had sexual intercourse with G.S.K., (2) G.S.K. did not consent to the intercourse, and (3) Mao caused G.S.K. to become pregnant. *See* WIS. STAT. § 940.225(1)(a); WIS JI—CRIMINAL 1201A. As summarized above, the prosecutor suggested to the jury five times that the lack-of-consent element was established by G.S.K.'s status as a sixteen-year-old. Mao maintains that the prosecutor misstated the law, and that trial counsel's failure to object to the prosecutor's repeated misstatement of law constituted ineffective assistance of counsel. On appeal, the State does not dispute that the prosecutor misstated the law, or that the trial counsel's failure to object constituted deficient performance. Instead, it argues that Mao was not prejudiced by trial counsel's deficiencies.

¶18    To prevail on an ineffective assistance of counsel claim, the defendant must show that counsel's actions or inaction constituted deficient performance which caused prejudice. *Strickland v. Washington*, 466 U.S. 668,

8

687 (1984); *State v. Love*, 2005 WI 116, ¶30, 284 Wis. 2d 111, 700 N.W.2d 62. To prove constitutional prejudice, the defendant must show that but for counsel's unprofessional errors a reasonable probability exists that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Love*, 284 Wis. 2d 111, ¶30.

¶19　Whether counsel's actions were deficient or prejudicial is a mixed question of law and fact. *Strickland*, 466 U.S. at 698. The circuit court's findings of fact will not be reversed unless clearly erroneous. *State v. Pitsch*, 124 Wis. 2d 628, 634, 369 N.W.2d 711 (1985). However, whether counsel's conduct violated the defendant's right to effective assistance of counsel is a legal determination, which this court decides de novo. *Id.* We need not address both prongs of the test if the defendant fails to make a sufficient showing on either one. *Strickland*, 466 U.S. at 697.

¶20　We decide this appeal on the prejudice prong, and conclude that Mao has not established a reasonable probability that, but for trial counsel's deficient performance, the result of the trial would have been different. The jury was presented with overwhelming evidence of G.S.K.'s mental deficiencies and her inability to give informed consent. Witnesses testified about her low IQ, diagnosis of fetal alcohol syndrome, inability to function independently, impaired capacity to process information and make decisions therefrom, and limited understanding of reproductive and sexual development. As the circuit court found, the video of G.S.K.'s forensic interview and her in-court testimony "both demonstrated the extent of G.S.K.'s mental deficiency."

¶21　Further, the circuit court properly instructed the jury on each and every element of first-degree sexual assault under WIS. STAT. § 940.225(1)(a),

9

including the definition of consent as set forth in § 940.225(4) and (4)(b). The court did not state or suggest to the jury that G.S.K.'s age rendered her unable to consent to sexual contact or intercourse.

¶22    Mao argues that the pattern jury instruction did not cure any prejudice because it did not affirmatively correct or contradict the prosecutor's misstatement. We are not persuaded. We presume that the jury followed the circuit court's instructions. *State v. Truax*, 151 Wis. 2d 354, 362, 444 N.W.2d 432 (Ct. App. 1989). Nothing in the record suggests that the jury ignored the pattern instruction. In light of the pertinent consent instructions given that make no mention of age and the overwhelming evidence supporting a finding that G.S.K. could not consent due to lack of competence, Mao's claim is too speculative to establish prejudice.

¶23    For these same reasons, we reject Mao's attenuated argument that the prosecutor's repeated misstatement regarding the intent element in count one might have tainted the jury's verdict on count two. Here, Mao asserts that the prosecutor's misstatement could have led a reasonable jury to convict him of count two based on the victim's age because the "mental deficiency" definition in count two is similar to the definition of "incompetency" in count one, and the jury was repeatedly informed that the victim's age met the former definition. Mao's theory is even more speculative as applied to count two. The jury was properly instructed on the elements of count two and we presume it followed those instructions. The evidence supporting count two was just as overwhelming as that supporting count one.

*Plain Error*

¶24    In the alternative, Mao argues that the prosecutor's repeated misstatement of law constitute plain error, entitling him to a new trial. Plain error is "error so fundamental that a new trial or other relief must be granted even though the action was not objected to at the time." ***State v. Jorgensen***, 2008 WI 60, ¶21, 310 Wis. 2d 138, 754 N.W.2d 77. A plain error must be "'obvious and substantial,'" and the doctrine should be invoked "sparingly"; its existence "'will turn on the facts of the particular case.'" ***Id.***, ¶¶21-22 (quoted sources omitted). "If the defendant shows that the unobjected to error is fundamental, obvious, and substantial, the burden then shifts to the State to show the error was harmless." ***Id.***, ¶23. An error is harmless when "it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" ***State v. Harris***, 2008 WI 15, ¶43, 307 Wis. 2d 555, 745 N.W.2d 397 (quoted source omitted).

¶25    Here, the circuit court determined that the error was fundamental, obvious, and substantial, but that the State met its burden to prove harmlessness:

> [T]he State has demonstrated beyond a reasonable doubt that a rational jury would still have found Mao guilty. The error was unfortunately frequent. It was made three times on the first day of trial and twice on the second day. No curative instruction was provided to the jury. The jury did receive the pattern jury instruction for the offense. That, combined with the overall strength of the state's case, shows that the error was harmless.
>
> The pattern instruction required the jury to find that GSK did not consent to sexual intercourse. The instruction gave the jury what was required for a finding that GSK was not competent to consent to sexual intercourse. *See* Jury Instructions, pp.18-19. Nothing in the jury instruction relates to age. The evidence presented at trial, summarized above, was overwhelming with regard to GSK's inability to consent to sexual intercourse because she did not have the

11

> mental capacity to understand the nature and consequences of having sexual intercourse.
>
> Taken as a whole, and even in light of the State's misstatements, the result reached by the jury is reliable. The evidence before the jury, demonstrated beyond a reasonable doubt that GSK suffered from a mental deficiency which prevented her from consenting to sexual intercourse.

¶26 On our independent review of the record, for the reasons stated by the circuit court and given our earlier analysis and conclusion that Mao was not prejudiced by trial counsel's failure to object, we agree that any error was harmless. *See State v. Harvey*, 2002 WI 93, ¶41, 254 Wis. 2d 442, 647 N.W.2d 189 (the test for harmless error is essentially the same as the test for prejudice under *Strickland*, except that the State bears the burden of proof).

## *Interest of Justice*

¶27 Mao argues that the "real controversy" in this case was not fully tried because the jury might have improperly convicted Mao on the basis of G.S.K.'s age, rather than the statutory elements. We review the circuit court's ruling on a claim seeking a new trial in the interest of justice for an erroneous exercise of discretion. *State v. Hurley*, 2015 WI 35, ¶30, 361 Wis. 2d 529, 861 N.W.2d 174.

¶28 The circuit court ruled on Mao's claim as follows:

> A new trial may be ordered in the interest of justice "whenever the real controversy has not been fully tried." [*State*] *v. D'Acquisto*, 124 Wis. 2d 758, 763, 370 N.W.2d 781 (1985) (citing [*State*] *v. Wyss*, 124 Wis. 2d 681, 770, 370 N.W.2d 745 (1985)[ overruled on other grounds by *State v. Poellinger*, 153 Wis. 2d 493, 504-06 & n.6, 451 N.W.2d 752 (1990)]). Justice may require a new trial in a matter, "when the jury had before it evidence not properly admitted which so clouded a crucial issue that it may be fairly said the real controversy was not fully tried." …

> *Wyss*, 124 Wis. 2d at 770 (internal citation omitted). An appeal in the interest of justice should be granted only in exceptional cases. [*State*] *v. Kucharski*, 2015 WI 64, ¶23, 363 Wis. 2d 658, 866 N.W.2d 697.
>
> The jury in this case had information before it that was not correct – the idea that GSK was not competent to consent to sexual intercourse based upon her age alone. But, as described above, the evidence of GSK's inability to consent to sexual intercourse based on her mental capacity was overwhelming. It cannot be said here that the misinformation about age of consent clouded the jury from fully considering whether GSK had the mental capacity to understand the nature and consequence of having sexual intercourse. The issue was fully tried to the jury and the verdict reached by the jury was reliable.

¶29 The circuit court's decision identifies the controlling principles of law and applies them to the correct facts in a reasonable manner. This constitutes a demonstrably proper exercise of discretion. Put another way, it cannot be said "that no reasonable judge, acting on the same facts and underlying law, could reach the same conclusion." *State v. Jeske*, 197 Wis. 2d 905, 913, 541 N.W.2d 225 (Ct. App. 1995).

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.